BY THE

## ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1919.

---

SIMON H. FROLICHSTEIN, Appellant, v. CUPPLES STATION LIGHT, HEAT & POWER COMPANY and THE CITY OF ST. LOUIS, Respondent.

St. Louis Court of Appeals. Argued and Submitted, January 22, 1919. Opinion Filed March 4, 1919.

1. MUNICIPAL CORPORATIONS: Ordinances: Construction: Overhead Electric Wires: Permits under Ordinances. Although Ordinance No. 18680 of the city of St. Louis, known as the Keyes Ordinance, established and defined an underground district wherein electric wires were required to be laid in conduits, and authorized and required parties to file applications for permits under the ordinance within ninety days, it also required them to file acceptances of the provisions of articles 2 and 9, of chapter 15, of the Revised Ordinances of 1895, granting the privilege to place overhead wires along streets and alleys and public places, requiring the filing of such application within the time provided by the Keyes Ordinance, so it was immaterial whether they had, prior thereto and within the times designated in articles 2 and 9, filed an application for a permit.

2. ———: ———: ———: ———: Title and Subject. Ordinance No. 18680 of the city of the St. Louis establishing and defining an underground district where electric wires were required to be laid in conduits, notwithstanding its title, specifically refers to wires, tubes or cables conducting or transmitting electricity along or across any street, alley or public place, etc., by persons or corporations complying with Revised Ordinances of 1895, chapter 15, articles 2 and 9.

(162)

3. ———: ———: ———: ———: **Right to Erect Poles and String
Wires.** *Held* that by acceptance of the terms prescribed by the
Keyes Ordinance within the time there prescribed, and by accep-
tance of the terms and in compliance with the provisions of ar-
ticles 2 and 9, chapter 15 of the Code of 1895, Ordinance No. 17188,
within the time designated in Keyes Ordinance, that the defend-
ant was authorized to erect poles and string wires thereon in
the district in which it proposed to erect those poles that district
being outside of the restricted district.

Appeal from the Circuit Court of the City of St. Louis
—*Hon. Eugene McQuillin,* Judge.

AFFIRMED. ·

*Schnurmacher & Rassieur* and *John M. Goodman*
for appellant.

(1.) The title to Ordinance No. 18680 limits the
subject matter thereof to underground wiring, and
section 13, article 3, of the charter of St. Louis con-
cerning titles to ordinances, restricts the provisions of
such ordinance to such subject-matter. To construe
the ordinance as granting rights respecting surface and
overhead wires, would by interpretation make the ordi-
nance extend to matters concerning which the Muni-
cipal Assembly could not have legislated. (a) The
only subject-matter referring to legislation in the title
to Ordinance No. 18680 is that relating to underground
wiring. (b) The reference in the title to the section
of the "Krum Code" and ordinances to be repealed
do not extend the right of the Municipal Assembly to
enact original legislation respecting the subject-matter
of the repealed provisions, because such title does not
provide for the enactment of new provisions in lieu
thereof. (c) No ordinance can contain legislation with
respect to more than one subject, which must be clearly
expressed in the title. Charter of the City of St. Louis
(1876), section 13, article 3. (d) The charter provision
above refered to is mandatory in its nature and must
be observed. 2 Dillon, Municipal Corporations, sec-
tion 577. (e) It is the uniform rule in Missouri that

courts will look to the title of an act of the Legislature or Municipal Assembly to ascertain the true intent of the legislation set forth under such caption. City of Sedalia v. Taylor, 206 Mo. 346; Dart v. Bagley, 110 Mo. 42. 2 The fact that Ordinance No. 18680 did not amend, but left intact section 603 of the Krum Code, which then and for some time had limited the granting of franchises and permits for the placing of wires in the streets of St. Louis to persons or companies who had acquired rights under Ordinance No. 12723, as limited by Ordinance No. 16894 and re-inacted all of old section 604 in so far as the same related to surface wiring—in other words, left the old ordinances relating to surface wiring privileges as they had always stood— is a strong indication that by the "Keyes Ordinance" no new legislation relating to surface wiring was intended. (3) Ordinance No. 18680 analyzed by section will disclose that it relates solely to the subject of underground wiring and grants no rights or privileges with respect to surface wiring whatsoever. (a) The law is well settled that the procurement of a charter right from the State for the purpose of operating wires for the production of electricity does not grant such person, corporation or association any permit or franchise to use the streets. State of Missouri, ex rel. Laclede Gas Light Company v. Murphy, 170 U. S. 78; 42 Law Edition 955; State of Missouri, ex rel. Laclede Gas Light Company v. Murphy, 130 Mo. 10. (4) In case of doubtful construction grants or franchise or permits to use the public streets must be construed in favor of the public and against the grantee Ransom v. Citizens' Railway Company, 104 Mo. 375; Hannibal & St. Joseph Railway Company v. Missouri River Packet Company, 125 U. S. 260, 31 L. Ed. 731; 4 Mc-Quillin, Municipal Corporations, sec. 1652, and notes; 3 Dillon, Municipal Corporations, sec. 1233, and notes.

(5)   The complex growth of the city, increase of use and occupancy of its streets, the increased danger of conveying electricity by surface wires and the history of ordinance legislation show a strong tendency to

force such wires under ground, and are against any theory of construction that tends to enlarge and increase franchises for surface or overhead wiring. (6) The contention that because section 604-H required all companies procuring permits to erect wires, etc., in the conduit district to comply with the terms and conditions of articles 2 and 9 of chapter 15 of the Krum Code and all other ordinances in force at the time, gives such persons, corporations and associations surface wiring franchises, is without merit.

*Nathan Frank, Chas. W. Bates* and *I. R. Kelso* for respondent, Cupples Station Light, Heat and Power Co.

(1) Respondent complied with all the requirements of ordinance No. 18680, approved September 8, 1896, known as the Keyes Ordinance. The record so shows and the fact is not questioned in this case. (2) The provisions of article 2 of chapter 15 of the Revised Ordinances of the city of St. Louis, after the enactment of the amendatory ordinance No. 18680 (the Keyes Ordinance), granted to all those who complied with their requirements electric wire franchise to use the streets, alleys and public places of the city of St. Louis for the transmission of electricity in serving the public. See provisions of said ordinances, as amended by ordinance No. 18680 in respondent's statement (pages 4 to 20). (3) As bearing upon the construction of these ordinance provisions, we call attention to the following suggestions, in the light of which we believe said provisions should be construed. (a) After the adoption of an amendatory ordinance the amendment forms part of the ordinance amended, and the two form one complete ordinance, and must be read as one in its application to future transactions. (b) In construing an ordinance or statute, if of doubtful meaning, the court will consider, among other things, the whole and every part thereof, taken and compared together, including the title; also ordinance or statute *in pari materiæ* and prior ordinances or statutes. Dart v. Bagley, 110 Mo. 42, 53; Sedalia v. Smith, 206 Mo. 346, 364-365. (c) In contruing

an ordinance granting the use of streets for public purposes, a fair and reasonable · meaning should be accorded, giving full effect to all the language, discarding none of it as meaningless. Ransom v. Citizens Railway Co., 104 Mo. 375, 380. (d) In construing an act granting the right to contruct a bridge for public purposes over a navigable stream, courts must look to its spirit and reason and purpose. Missouri River Packet Co. v. Hannibal & St. Joseph Ry. Co., 79 Mo. 478, 492. (e) Acts granting franchise rights in streets should be so construed as to prevent monopolies. State ex rel. Laclede Gas Light Co. v. Murphy, 130 Mo. 10, 26. (4) Ordinance No. 18680 (the Keyes Ordinance) was authority from the Municipal Assembly, as required by section 603 of article 2 of chapter 15 of the Revised Ordinances of the city of St. Louis of 1893, granting to respondent, by compliance with its terms, the privilege of placing wires, tubes, cables and electric apparatus along the streets, alleys and public places of the city of St. Louis. (5) The title of ordinance No. 18680 (the Keyes Ordinance) is suffient to justify provisions relating to overhead, as well as underground electric wires and apparatus. See Title of this ordinance, appellant's abstract, p. 36; St. Louis v. Commission & Inv. Co., 226 Mo. 148, 158; St. Louis v. Liessing, 190 Mo. 464, 490; Senn v. Railroad Co., 124 Mo. 621, 627-628; State ex rel. v. County Court, 128 Mo. 427, 440-441; St. Louis v. Tiffel, 42 Mo. 578, 590; St. Louis v. United Rys. Co., 263 Mo. 387, 451-452; State v. Helton, 255 Mo. 170, 180-181; Lynch v. Murphy, 119 Mo. 163, 169-170; State v. McEniry, 269 Mo. 228, 230.

*Charles H. Daues* and *H. A. Hamilton* for respondent, The City of St. Louis.

(1) Ordinance No. 18,680, according to its title, was "amendatory of article 2 chapter 15, of 'An ordinance in revision of the ordinances of the city of St. Louis and to establish new ordinance provisions for the Government of said city,' and to properly construe said

Ordinance No. 18,680 the same must be read in connection with said article 2 of chapter 15 of the Revised Ordinances of the city of St. Louis of 1893. (2) The construction of Ordinance No. 18,680, in connection with prior ordinances upon the subject of transmitting electricity for light, heat and power purposes throughout the city of St. Louis, authorized the Board of Public Improvements of the city of St. Louis to issue its permit to respondent Cupples Station Light, Heat and Power Company to conduct electric current over wires placed in conduits in the underground district specified in Ordinance No. 18,680, and upon overhead wires contructed upon poles in other portions of the city of St. Louis.

REYNOLDS, P. J.—On August 8, 1914, plaintiff commenced this action against Cupples Station Light, Heat & Power Company (hereafter, for brevity, called Cupples Company), and the city of St. Louis, by filing a petition, in which, averring the incorporation of the Cupples Company under the general laws of this State, and that the defendant city of St. Louis is a municipal corporation of this State, it is set out that plaintiff is the owner of a certain lot situated on Minerva Avenue, in the city of St. Louis, and that the Cupples Company "is about to erect in front of it, poles whereon to string electric wires carrying a high voltage of electric current," without the consent or approval of plaintiff, and against his wish, and is about to do so with the license, permit and consent of the city of St. Louis, undertaken to be given and granted by the Board of Public Improvements of the city. Plaintiff prays for an injunction restraining the placing, erecting or maintaining of any poles by defendant Cupples Company in front of, adjacent, or contingent to the property of plaintiff pending the hearing of the cause, and that on final hearing a permanent injunction be issued, restraining defendant from doing any of the acts aforesaid. Upon the filing of this petition a temporary injunction was issued. Thereafter proceedings were instituted for

contempt for alleged violation of the temporary injunction. Each defendant made return to this, but this proceeding for contempt being afterwards abandoned, the returns, by leave of court, stood as answers to the petition and we will so treat them.

The answer of the Cupples Company, admitting its incorporation and that of its co-defendant, denies that it is about to or will erect "in front of the plaintiff's said property" any poles, and denies each and every allegation in the petition except those alleging the incorporation of itself and its co-defendant.

The answer of the city of St. Louis, after denying the allegations in the petition, sets up the adoption of ordinance No. 18,680, and its approval September 8, 1896, this ordinance commonly known as the "Keyes Ordinance." The terms of the ordinance are set out, among them the provision that the corporations referred to, as a condition precedent to the acquisition of the privileges described, agree to comply with the terms and conditions of article 2, and article 9, chapter 15, of an ordinance in revision of the ordinance of the city approved April 7, 1893, and that before the expiration of the period of ninety days after the passage of ordinance 18,680, the Cupples Company was duly authorized by its charter to operate wires, etc., and that on dates named, running from December 4th to December 30, 1896, it duly filed with the City Register written acceptances of all the terms and conditions of articles 2 and 9, chapter 15 of the Revised Ordinance, approved April 7, 1893, and of all the terms and conditions and obligations of ordinance 18,680, and had duly executed the bonds required by those articles and by ordinance No. 18,680, and that the bonds had been duly approved by the Mayor and Council of the city of St. Louis. It is further averred that Minerva Avenue is a public street in the city and that the part of it referred to is outside of the limits prescribed by ordinance No. 18,680, within which all wires, tubes, cables, etc., conveying electricity were required to be placed below the surface of the streets, alleys, etc.; that on

or about August 3, 1914, the Cupples Company duly applied to the board of Public Improvements of the city of St. Louis for a permit to erect a pole at the point described in plaintiff's petition, for the purpose of placing wires and cables conducting electricity thereon, and that on or about August 5, 1914, the Board of Public Improvements of the city duly issued a permit to the Cupples Company pursuant to the terms of ordinance No. 18,680 and not otherwise.

General denials by way of replies to these returns, substituted as answers, were filed in due time, the cause was heard before the court, the temporary injunction dissolved and plaintiff's action dismissed, there being a judgment for the defendants.

From this an appeal was taken to the Supreme Court. That court holding that the city of St. Louis was not a necessary party to the proceeding and that its presence alone sustained the jurisdiction of the Supreme Court, transferred the cause to our court. [Froelichstein v. Cupples Station Light, Heat & Power Company et al., not yet officially reported, but see 201 S. W. 897.]

At the trial it was stipulated by counsel that permits were issued to the Cupples Company, among others, in accordance with ordinance No. 18,680, and that the Cupples Company acquired whatever authority it had through the permit issued to it under that ordinance; that within ninety days after the passage of ordinance No. 18,680, the defendant Cupples Company was duly authorized by its charter to operate wires, tubes and cables conducting, transmitting or employing electricity for public use in the city of St. Louis, and that it did, on or about the 4th day of December, 1896, file with the City Register its written acceptance of all the terms and conditions of article 2, and also article 9, of chapter 15, of the Revised Ordinances of the city of St. Louis, approved April 7, 1893; that on or about December 5, 1896, said Cupples Company duly executed its bond to the city of St. Louis in the penal sum of $30,000, conditioned that it would comply with all of the conditions

of article 2 and article 9, chapter 15, of the Revised
Ordinances of the city of St. Louis, approved April 7,
1893; that said bond was duly approved by the Mayor
and Council of the City of St. Louis; that on the fifth
day of December, 1896, the defendant Cupples Company
executed its bond to the city of St. Louis in the sum of
$50,000, conditioned that all of its conduits, ducts, man-
holes and other appurtenances should be constructed
in strict accordance with plans approved by the Board
of Public Improvements of the city of St. Louis and to
hold said city harmless from all suits for damages
which might arise from the construction of said ap-
pliances, and that it would faithfully comply with all
the terms of article 2, as amended, of chapter 15, and of
article 9, of chapter 15, of the Revised Ordinances of
the city of St. Louis, approved by the Mayor and Council
of the city of St. Louis; that on or about the 30th day
of December, 1896, the Cupples Company duly executed
its bond to the city of St. Louis in the sum of $20,000,
conditioned that it would comply with all of the con-
ditions of article 9, chapter 15, of the Revised Ordinances
of the city of St. Louis, approved April 7, 1893; that
said bond was duly approved by the Mayor and Council
of the city of St. Louis; that the acceptances and these
bonds were all required of companies seeking to qualify
and to secure the benefits of the provisions of what is
known as the Keyes Ordinance (ordinance No. 18,680),
to qualify the companies under that Keyes Ordinance;
that the street where these poles were being erected or
threatened to be erected, is a public street of the city
of St. Louis, and that that part of the street where the
poles were threatened to be erected is outside of the
restricted limits specified in the limits of the Keyes
Ordinance (No. 18,680).

Plaintiff introduced no oral evidence.

Defendants introduced in evidence ordinance No.
11,976, approved March 20, 1882. An analysis of this
ordinance, as far as necessary, will be found in the
opinion of the learned circuit judge hereafter embodied.
Also ordinance No. 12,723, approved March 15, 1884.

See Revised Ordinances 1887 (Sullivan's Edition), adopted by ordinance No. 14,000, approved April 12, 1887, and there appearing as sections 581 to 592, article 2, chapter 15. The concluding two sections of ordinance No. 12,723 (sections 12 and 13) do not appear in Sullivan's Edition, section 12 repealing all ordinances or parts of ordinances inconsistent with the terms of this ordinance, and section 13 being a reservation on the part of the city of the right to amend, alter or repeal the ordinance at any time. Also ordinance No. 16,894, approved October 26, 1892, which struck out sections 581, 583, 584, 585 and 586, as there appearing in article 2, chapter 15, and substituted 5 sections in lieu of them. As amended they appear as sections 603, 605, 606, 607 and 608, of the revision of revised ordinance No. 17,188, approved April 7, 1893, article 2, chapter 15, Krum's Edition. Also ordinance No. 18,157, approved July 31, 1895, which amends section 604, article 2, chapter 15, Krum's Edition, supra, by inserting a new section in lieu thereof. As this is one of the ordinances repealed by the Keyes Ordinance it is not necessary to set it out.

The next ordinance offered was No. 18,480, approved April 20, 1896. As it was agreed at the hearing that this ordinance had never been accepted or acted upon by any one, and as it was repealed by the Keyes Ordinance, it is not necessary to set it out. The next ordinance introduced in evidence was No. 18,680, the Keyes Ordinance. As that is fully commented on in the opinion of the learned circuit judge, hereafter referred to, it is not necessary to set it out, further than to say that it first appeared in McQuillin's Municipal Code of 1900, as parts of article 6, chapter 12. Article 2, chapter 15, of the Revised Ordinance (No. 17,188, approved April 7, 1893), and article 9 of the same chapter (see Krum's Edition of 1895) were also in evidence.

The only oral testimony was given by a witness called by defendants, who testified that he had entered into office as supervisor of city lighting in St. Louis in 1890, and was in that office in the fall of 1896. He

testified that he was familiar with the conditions that existed throughout the city of St. Louis in respect to electric light conduits, wiring systems and things of that sort; that up to and before 1896, electricity was conducted through the streets of the city for commercial purposes by overhead conductors, that being the plan prevailing throughout the whole city, that is conducted by lines and wires supported by poles; that prior to September, 1896, there were some conduits laid for conveyance of electric current, known as mutual or neighborhood conduits, but these were not of much, if any, commercial importance; remembered the passage of ordinance No. 18,680, commonly known as the "Keyes Ordinance," which was passed in September 1896, which created a so-called underground district within which wires conveying electric current were required to be put underground. The only conduits outside of that district up to that time were in Benton and Waverly Places, probably covering about 2000 feet, the electricity used for lighting those private places. These were afterwards connected with the public conduit for commercial purposes. It was admitted that what was known as ordinance No. 11,976, approved March 30, 1882, and before the adoption of the Keyes Ordinance, was never accepted by any person or corporation; that ordinance No. 18,480, approved April 20, 1896, was never accepted by any person or corporation and nothing was ever done or undertaken under it and it was abandoned.

Plaintiff then offered in evidence five exhibits, being the acceptance by the Cupples Company of all the terms and obligations and conditions of ordinance No. 18,680, as also of "all the terms, conditions and obligations in all respects of article 2 and article 9, of chapter 15, of the Revised Ordinances of the city of St. Louis, approved April 7, 1893, and of an ordinance amendatory thereof, being ordinance No. 18,680, approved September 8, 1896," as also two bonds for $20,000 each, required by those articles, as well as the bond for $50,000, required by ordinance No. 18,680, all of which bore the

certificate of the City Counselor that they were in due form of law, were approved by the Mayor on various dates from December 4th to December 30, 1898, and by the City Council and duly filed with the City Register.

The assignments of error by the learned counsel for the appellant are to the action of the trial court in holding and adjudging that persons, corporations or associations, who had complied with ordinance No. 18,680, and no more, were entitled to permits or a franchise to place wires above the surface of the ground in the streets, alleys and public places of the city, here referring to Minerva Avenue in front of the abutting property of plaintiff, that point being outside of the prohibited district within which all wires were required to be placed underground.

Learned counsel for the city contend that the issuing of the permits to the Cupples Company was regular and in conformity with the ordinances, and that therefore the judgment of the circuit court should be sustained.

Learned counsel for the Cupples Company also argue that the respondent had complied with all the requirements of ordinance No. 18,680, commonly known as the Keyes Ordinance, and that the record shows that, and that it is not questioned in the case; that the provisions of article 2, of chapter 15, of the Revised Ordinances of the city, after the enactment of the Keyes Ordinance, granted to all those who comply with the requirements of these ordinances, an electric wire franchise to use the streets and alleys and public places in the city for the transmission of electricity in serving the public, and as bearing upon the construction of these ordinance provisions, it is suggested that after the adoption of an amendatory ordinance, the amendment forms part of the ordinance amended and the two form one complete ordinance and must be read as one in its application to future transactions; that the ordinance is to be construed as a whole, including the title, and that a fair and reasonable meaning shall be accorded, giving the full effect to all the language and

discarding none of it as meaningless; that Acts granting franchise rights in the streets should be construed so as to prevent monopolies; that the Keyes Ordinance was authority from the Municipal Assembly as required by section 603, of article 2, of chapter 15, of the revised ordinance granting to respondent, upon compliance with its terms, the privilege of placing wires, etc., along the streets and alleys and public places of the city, and that the title of the Keyes Ordinance is sufficient to justify provisions relating to overhead as well as underground electric wires and appurtenances.

By a reply brief learned counsel for appellant contend that the Keyes Ordinance is confined to and must be construed as only granting underground and conduit privileges.

It is not out of place to note that the learned judge of the Supreme Court who wrote the opinion in this case, supra, said: "In passing it might be stated that the Union Electric Light & Power Company, though not a party to the record, is also interested in the case, in that it does not want the Cupples Company to enter that field as a competitor in business, and is assisting the plaintiff in the prosecution of this case." That is still the situation.

We have before us the opinion filed with his decision in the case by the learned circuit judge who heard and determined it. As that judge was the author and annotator of the Municipal Code of 1900, as also author of a very extensive and accepted work on municipal corporations ("McQuillin on Municipal Corporations"), we have no hesitation in following his analysis of the history of the municipal legislation on this matter and avail ourselves of the opinion which he filed by extracting therefrom the following:

After stating the claims of the several parties that learned judge says:

"The precise question presented for determination, therefore, is whether the defendant company is entitled to maintain poles and wires for the distribution of electricity in those parts of the city outside of the

underground district defined by Ordinance No. 18,680, usually called the Keyes Ordinance.

"Whatever right, if any, the defendant company has in this respect is in the nature of a franchise duly obtained from the municipality, and in the city of St. Louis such franchise right can be granted legally only by ordinance, either general or special. No special ordinance is claimed to exist here, but defendant company relies alone on the general ordinances of the city of St. Louis.

\*    \*    \*    \*    \*    \*    \*

"The state of the legislation on the part of the city discloses the following facts:

"By virtue of section 1158, Revised Code of the city of St. Louis, 1912 (Section 1093, Revised Code, 1903), and section 1070, Municipal Code, 1901, which provision is part of Ordinance 16,894, approved October 26, 1892), wires, tubes and cables conveying electricity for the production of light, heat or power can be placed along or across any of the streets, alleys and public places in the city, by any person, corporation or association, on one of two conditions only:

"1.    By having, prior to October 26, 1892, accepted and complied with Ordinance No. 12,723, approved March 15, 1884.

"2.    By due authorization by the Municipal Assembly (by ordinance) and then only as provided by ordinance.

"The first ordinance on this subject is No. 11,976, approved March 30, 1882, and the first section thereof provides:

" 'That no wires or cables conveying electricity for the production of light or power shall be placed along or across any of the streets or alleys in the city of St. Louis, except as hereinafter provided.'

"Section 1 of Ordinance 12,723, approved March 15, 1884 (being the second ordinance on the subject), employs the same language.

"Section 2 of Ordinance 11,976 provides that all such wires or cables along or across any of the streets

or alleys 'shall be placed at such a distance below the surface of the ground, and in such manner, as shall be prescribed by the Board of Public Improvements.'

"Section 2 of Ordinance 12,723 provides that all such wires, tubes and cables along or across any of the streets, alleys or public places 'shall be placed at such distance above or below the surface of the ground, and secured in such manner as shall be prescribed by the Board of Public Improvements.' The latter ordinance does not repeal section 2 of Ordinance 11,976 or any part thereof, by express terms, but contains the common general statement 'That all ordinances or parts of ordinances inconsistent with the terms of this ordinance be and the same are hereby repealed.' (Section 12).

"Ordinance No. 12,723 provides a complete method for placing wires, etc., and section 3 thereof conferred the right in broad terms on 'any person or persons, corporation or association,' but section 1186, R. C. 1912 (Section 1118, R. C. 1907, and section 1095, M. C. 1901, which is a part of Ordinance No. 16,894, hereinafter mentioned, and which repeals section 3 of Ordinance No. 12,723); restricts the right to such 'person or persons, corporation or association duly authorized to do business in the city,' etc.

"Ordinance 12,723 was incorporated in the revision of the general ordinance of 1887, under the designation of article II, chapter 15, and its several provisions became Sections 581 to 592, both inclusive; and section 2 thereof, above quoted, became section 582 of that revision.

"Ordinance No. 16,894 was approved October 26, 1892. It is an amendment to certain sections of article II, chapter 15, of the Revision of 1887, by striking out sections 581, 583, 584, 585 and 586, and enacting new sections in lieu thereof; but sections 582, 587 to 592, both inclusive, were not altered by this legislation. The new section 581 of Ordinance 16,894 provides that no wires or cables conveying electricity for the production of light, heat or power shall hereafter be placed along

or across any of the streets, alleys or public places in the city of St. Louis by any person, corporation or association not having previous to the passage of this ordinance (October 26, 1892) accepted and complied with Ordinance 12,723, now amended, or shall be duly authorized by the municipal Assembly, and that only as hereinafter provided.'

"This new section 581 became section 603 of the revision of general ordinances approved April 7, 1893, and section 582 of the revision of 1887 became section 604 of the revision of 1893, which section is section 2 of Ordinance 12,723.

"By comparison of Ordinances 12,723 and 16,894, it appears that the latter ordinance, by amendment of article II, chapter 15, of the revision of 1887, repealed sections 1, 3, 4, 5 and 6 of the former ordinance, and permitted the following sections to stand: 2, 7, 8, 9, 10, 11, 12 and 13.

"Section 2 of Ordinance 12,723, although not repealed by express terms, is superseded by section 1159, R. C. 1912 (Section 1094, R. C. 1907, and Section 1071, M. C. 1901), as the latter provisions are not inconsistent.

"Section 7 is now section 1190, R. C. 1912 (section 1122, R. C. 1907, and section 1099, M. C. 1901).

"Section 8 is now section 1191, R. C. 1912, (section 1123, R. C. 1907, and section 1100, M. C. 1901).

"Section 9 is now section 1192, R. C. 1912 (section 1124, R. C. 1907, and section 1101, M. C. 1901).

"Section 10 is now section 1193, R. C. 1912, (section 1125, R. C. 1907, and section 1102, M. C. 1901).

"Section 11 is now section 1194, R. C. 1912 (section 1126, R. C. 1907, and section 1104, M. C. 1901).

"Section 12 relates to repealing of inconsistent ordinances.

"Section 13 is now section 1195, R. C. 1912 (section 1127, R. C. 1907, and section 1104, M. C. 1901).

"As already stated, section 3 of Ordinance 12,723 extended the right to place wires, etc., on the conditions therein specified in broad terms 'to any person, persons,

corporation or association.' Ordinance No. 16,894 restricted the right—first, to such persons, corporations or associations as are duly authorized by ordinance to do business in the city, etc.; second, to those who had qualified under Ordinance 12,723 prior to October 26, 1892, or who should obtain permission by ordinance (either general or special).

"Ordinance 18, 157, approved July 31, 1895, struck out section 604 of the Revision of 1893 and inserted in lieu thereof a new section which, in substance, provided that wires placed above the surface of the ground should be under the direction of the Board of Public Improvements, and that an ordinance was necessary to confer the power to place wires below the surface of the ground, and that the work should be done under the supervision of the Board of Public Improvements, etc.

"Ordinance No. 18, 480 was approved April 20, 1896, and was an amendment to section 604 of the Revision of 1893 (although, as above mentioned, Ordinance No. 18,157 struck out this section and in lieu thereof enacted new provisions), by striking out that section and enacting several new sections relating chiefly to placing wires underground.

"Ordinance No. 18,680 was approved September 8, 1896, and amended section 604 of the Revision of 1893, as amended by Ordinance 18,157 and 18,480 by striking out that section and inserting in lieu thereof several new sections. This legislation is commonly called the Keyes Ordinance.

"As mentioned above, Ordinance 18,157 amended section 604 of the Revision of 1893, and after that time Ordinance 18,480 sought to do the same thing. The first section of the Keyes Ordinance ignores the attempt made by the latter ordinances and expressly limits its legislative scope to amending section 604 of the Revision of 1893, as amended by Ordinance 18,157, by striking out that section and inserting in lieu thereof the following:

"'Section 604. All wires, tubes or cables conducting or transmitting electricity along or across any

street, alley or public place of the city of St. Louis, which are to be placed above the surface of the ground, shall be secured and placed in such manner as the Board of Public Improvements may prescribe.'

"This is in substance the amendment contained in Ordinance 18,157, and the precise language employed in Ordinance No. 18,480, which latter ordinance, it should be mentioned, having been regarded as invalid, was never conceived to be in force.

"Section 604-V of the Keyes Ordinance repealed by express terms Ordinances 18,157 and 18,480.

"Following the amendment of section 604, as above set forth, the Keyes Ordinance proceeds to enact twenty-two new sections, numbers 604-A to 604-V, inclusive.

"From the above recited, it is evident that the general ordinances of the city of St. Louis, concerning electric light franchises, exhibit a patchwork of legis-lation seemingly more or less incongruous—an inevitable result in the process of providing reasonable contractual and police regulation of a business presenting intricacies and complications as it developed by the application, of skill and science, and the keen competition, as well as the desire to thwart it and thus secure exclusive munic-ipal privileges, ever present when tempting pecuniary rewards are the spring to activity.

"Before the expiration of ninety days after the passage of the Keyes Ordinance, the defendant Company was duly authorized by its charter to operate wires, tubes and cables for the transmission of electricity for public use, and did within such time, in December, 1896, file acceptance of all the terms and conditions of articles II and IX of chapter 15 of the revision of general ordinances of 1893, and also of all terms and conditions of Ordinance 18, 680, together with the required bonds.

\* \* \* \* \* \* \*

"Section 604-H of the Keyes Ordinance provides by express terms that the acceptors thereof should also accept article II and IX of chapter 15 of the Revised Ordinance of 1893, and, in addition thereto, 'and all other ordinances in force at such time.' Articles II of

Chapter 15 of the Revision of 1893 was Ordinance 12,723, as amended in manner and form pointed out above, prior to 1896.

"Is it not manifest from this statement that the Keyes Ordinance deals directly with overhead electric work? If not, why does the ordinance demand acceptance of such of the provisions of Ordinance 12,723 then known to be in force?

"It thus appears that those who elected to qualify under the Keyes Ordinance were required to take the same kind of steps and perform the same kind of acts— file acceptances and bonds—as those who qualified under Ordinance 12,723. While this similarity of acceptances and bonds may not alone warrant the conclusion that like overhead wire privileges were to be extended, it is at least some evidence. that one purpose of the latter ordinance was to continue the earlier provisions touching the placing of wires above ground and extend them to eligible applicants. Instead of passing *sub-silentio* the provisions of Ordinance 12,723, pertaining to this matter, the Keyes Ordinance gave them at least a nod of recognition. But it may be urged with much plausibility that it did not and could not legally go so far as to re-enact in form that provision of the former ordinance which, as mentioned above, had been repealed by Ordinance 16,894, without repealing 'by express terms' (St. Louis Charter, article III, section 28) that provision. Moreover, the mere repeal of such provision by express terms would not have resulted in reviving in form the provision in Ordinance 12, 723, which was repealed by Ordinance 16,894. (R. S. 1909, section 8060; R. C., secs. 50, 60; 2 McQuillin Municipal Corporations, sec. 834.)

"However, it was entirely competent for the Keyes Ordinance to remove the restriction imposed by Ordinance 16, 894 (Section 1158, R. C. 1912; Section 1070, M. C. 1901) and reinstate therein in express language or in substance the provisions of Ordinance 12,723 concerning the placing of electric wires above the surface of

the ground outside of the underground district defined by it.

"It will be noted that the second restriction, as above mentioned, is that no one can place wires, etc., along or across any of the streets, etc., 'unless duly authorized by the Municipal Assmbly, and then only as provided by ordinance.' (Section 1158, R. C. 1912.) Thus the question is clearly defined: Is the Keyes Ordinance such authorization?

"After the passage of the Keyes Ordinance, the municipal legislation relating to the subject appears to require that it should be read as follows:

"Section 604 of the Keyes Ordinance, which is section 1159, R. C. 1912; section 1094, R. C. 1907, and section 1071, M. C. 1901, and a modification of section 2 of Ordinance 12,723. Then sections 7, 8, 9, 10, 11 and 13 of Ordinance 12,723. Then the five new sections enacted by Ordinance 16,894 in amending sections 581, 583, 584, 685 and 586 of article II, chapter 15, of the Revision of 1887, which new sections stand in lieu of sections 1, 3, 4, 5 and 6 of Ordinance 12,723. After this, the entire Keyes Ordinance is to be read from sections 604-A to 605-V, both inclusive.

"Read in this manner, it is evidence that the Keyes Ordinance is merely an amendment requiring the removal of poles and electric wires within a defined district and providing for placing them underground in that district and permitting the prior legislation as to placing of poles and electric wires beyond that district to stand as it then existed.

"That the Keyes Ordinance treats of overhead wires is clear from the mere reading of its title. Notwithstanding the English rule that the title cannot be restored (resorted to) in construing the enactment (Hunter v. Nickolds, 1 McN. & Cord. 651), from an early date in this country it has been recognized that the title of an ordinance or statute may be considered in its interpretation. [Dart v. Bagley, 110 Mo. 42, 51; Martindale v. Palmer, 52 Ind. 411.] This presumption is that the true intent and meaning is to be found in the title

unless it is plainly contradicted by the express terms of the body of the act. [Connecticut Mut. Life Ins. Co. v. Albert, 39 Mo. 181.] Indeed, the Charter of the city of St. Louis, following in this respect the usual constitutional provision, expressly requires that no bill (ordinance) shall contain more than one subject, which shall be clearly expressed by its title. [St. Luis Charter, art. III, sec. 13].

"The title of the Keyes Ordinance unequivocally recites that it is 'an ordinance amendatory of article II, chapter 15,' of the revision of general ordinances of 1893, 'and as the same was heretofore amended by Ordinance 18,157 . . . and by Ordinance 18,480 . . . and *to repeal section* 604 of article II, chapter 15, of Revised Ordinances of 1893, as amended by Ordinances 18,157 . . . and by Ordinance 18,480 . . . in relation to electric wires, tubes and cables, and authorizing the construction and operation of underground conduits, ducts, manholes and other appurtenances and replacing, operating and maintaining wires, tubes, cables and other electric conductors therein, and to regulate the terms upon which persons and corporations now having contracts with the city for doing public electric lighting, may place their wires underground, and to repeal Ordinances 18,157 . . . and to repeal Ordinance 18,480 . . .'

"A mere reading of this title establishes the fact that the ordinance deals with both *overhead and underground electric wires.* By express terms it recites that one purpose of the ordinance is 'to repeal section 604 of article II of chapter 15 of Revised Ordinances of 1893, as amended,' etc. It would be difficult to employ clearer or more explicit words. Since that section 604 deals with overhead wires, the conclusion is inevitable that the title of the ordinance in question does deal with that character of electric work; and moreover, as above pointed out, the first section of the ordinance itself, namely, section 604, deals exclusively with wires 'which are to be placed above the surface of the ground.'

* * * * * * *

"The well established general rule is that the meaning of an ordinance must be gathered from the law itself, and not from contemporaneous statements of the individuals who framed it, or of those who voted for it. This rule is particularly enforced where the provisions of the ordinance are clear. In such cases, contemporaneous construction adopted by the municipal officers charged with its enforcement will be held inadmissible to aid its construction. However, in doubtful cases, where the language of the ordinance is ambiguous, the contemporaneous construction adopted by the parties interested in the enforcement of the ordinance, while not controlling, is entitled to great weight. [2 McQuillin Municipal Corporations, sec. 813.]

"In speaking of the power of courts in ascertaining the purpose of municipal legislation, Mr. Justice FIELD aptly observes: 'We may take notice of the limitation given to the general terms of an ordinance by its practical construction as a fact in its history, as we do in some cases that a law has become practically obsolete.' [Ah Kow v. Neuman, 5 Sawyer (U. S.) 552, 560, 561.]

"Likewise a court may take notice of the construction of the scope of an ordinance immediately after its passage by the officers clothed with the power and duty of practically applying its provisions.

"Adopting this salutary rule, it is clear that when the then members of the Board of Public Improvements entertained the application of the defendant company, in December, 1896, within ninety days after the enactment of the Keyes Ordinance, they were of the opinion that this ordinance duly authorized such action. It also seems to be conceded in this case that at the same time like applications were entertained from other companies. Furthermore, the issuance of the license or permit by the Board of Public Improvements to place the poles and string the wires thereon to defendant company in the case here is clear evidence that the members of the Board had no doubt that such action was justified under the terms of this ordinance.

\* \* \* \* \* \* \*

"The construction here adopted does not and could not assert or indicate a municipal policy concerning future legislation on this subject. It asserts only that the municipality by the Keyes Ordinance authorized the companies therein described to qualify to do the things provided for by the then existing provisions of Ordinance 12,723, which they were forbidden from doing by Ordinance 16,894 after October 26, 1892, 'unless duly authorized by the Muincipal Assembly, and then only as prescribed by ordinance.' It asserts that the Keyes Ordinance is such an ordinance.

\* \* \* \* \* \* \*

"In view of the foregoing consideration, my opinion is that the ordinances of the city of St. Louis at present provide for both underground and overhead electric wires.

"The defendant company accepted and qualified under the Keyes Ordinance, and is therefore entitled to all the benefits and privileges conferred by the general ordinances of the city on any person or company who accepted and qualified under their provisions. That is,. by accepting and qualifying under the provisions of the Keyes Ordinance, the defendant company in effect thereby accepted and qualified under ordinance 12,723 as amended after its passage. This, for the reason that the Keyes Ordinance is merely an amendatory ordinance relating to the placing and maintenance of wires for the distribution of electricity. It is not limted to legislation respecting conduits and other underground electric work, but was designed to supplement prior legislation on the subject and thus complete and perfect a plan by which both underground and overhead electric wires for the distribution of electricity could be safely placed and used in the city; and the defining of the underground district and providing for the conditions and manner of locating wires therein was only a part of the general purpose, and not the sole object. The provision therein concerning acceptances related, therefore, to overhead as well as underground electric wires, and was a privilege extended for the period of ninety

(90) days to all persons and corporations which might be authorized to do an electric lighting business in the city.

"Therefore, the defendant company having fully accepted and complied with the provisions of the Keyes Ordinance, is clearly empowered by virtue of the permit duly issued by the Board of Public Improvements to proceed."

It will be seen that the learned trial judge, reciting not only the code revisions but the specific ordinance referred to, held that when the Keyes Ordinance authorized and required parties to file applications for permits under the ordinance, it also required them to file acceptances of the provisions of articles 2 and 9, of chapter 15, requiring the filing of this application within the time provided by the Keyes Ordinance, so it was immaterial whether they had, prior thereto and within the times designated in article 2 and 9, filed an application or obtained a permit. In this we think he was correct. It is to be noted that the language in section 604-H is that the Board of Public Improvements is authorized to grant permits to construct, alter and repair conduits, etc., "to any person or persons, corporation or association furnishing or using electricity for public use, on compliance by such person, persons, corporation or association with the terms and conditions of this article, and article 9 of this chapter, and all other ordinances in force," etc., providing also that they shall file a penal bond in the sum of $50,000 for compliance with the terms of the Keyes Ordinance as to the construction of conduits, etc. The language there used is not "shall have complied with the provisions of articles 2 and 9 of chapter 15," but "on compliance by such person," etc., "with the terms and conditions of this article" (which is article 2), "and article 9 of this chapter" (chapter 15), etc. So, whatever time limit there may have been in article 2 and in article 9, was removed by this provision or, more accurately speaking, was brought down to the date named in the Keyes Ordinance.

We may here note that the only case in which the Keyes Ordinance has been before our Supreme Court, to which our attention has been called or which we have found, is that of Missouri Valley Realty Co. v. Cupples Station Light, Heat & Power Co. et al., not officially reported but see 199 S. W. 151. There the Keyes Ordinance is recognized as a valid ordinance, but the points here involved were not before the Supreme Court.

At the argument of the case before us, counsel for appellant, with the consent of counsel for the respondents, left with us for our use a compilation of the germane ordinances and of the various (and varient, it may be said) constructions of it by the various city counselors. With this compilation we find one of date February 8, 1897, addressed to the Mayor of the city, signed by the then City Counselor, the Honorable William C. Marshall, passing on the applications and bonds hereinbefore referred to, in which communication to the Mayor that learned City Counselor set out that he was in receipt of a communication from the president of the Board of Public Improvements, transmitting to him a copy of the resolution of that Board, adopted December 7, 1896, in which his opinion is asked as to whether the named companies, which, on December 9, 1896, had presented to the Board, pursuant to advertisement under authority of Ordinance 18,680, applications for permission to construct underground conduits, are qualified applicants under the terms of that ordinance. Among other companies named is the Cupples Station Light, Heat & Power Company, a defendant here, it, including the city of St. Louis, being one of the eighteen applicants. The city Counselor advised the mayor, that upon receipt of the request, he had notified all of the companies and parties mentioned to appear before him and show whether or not they had complied with the provisions of ordinance No. 18,680 in such manner as to entitle them to a permit to construct underground conduits. Setting out that all of them except one company had appeared and exhibited their articles of association, certificates of incorporation,

acceptance and bonds, the City Counselor states that upon the first hearing it appeared that none of the applicants, except the city of St. Louis, were entitled to a permit; that in no single instance had any one company complied with all the requirements of the laws and nearly all of them insisted that they had complied with so much of the ordinance as applicable to them, and that they were not obligated to comply with all the requirements of the ordinance. Stating that at the outset he had held against this contention, the City Counselor stated that no company was entitled to a permit unless it could show that it had complied with the following requirements, to-wit: First, that it was authorized by its charter to operate wires, tubes and cables, etc., and that it had within ninety days, after the passage of ordinance No. 18,680, made application to the Board of Public Improvements for a permit to construct conduits, etc., and had accompanied the application with full, general and detailed plans showing the route, etc. Second, that it had accepted ordinance No. 18,680, as required by section 604 thereof. Third, that it had given bond in the sum of $50,000, as required by that ordinance. Fourth, that it had accepted the terms and conditions of article 2, chapter 15, Revised Ordinances 1892, and had given the $20,000 bond required by that article. Fifth, that it had accepted the terms and conditions of article 9, chapter 15, of the same ordinance and had given the $20,000 bond required by it. It appears from this report of the City Counslor that all the companies named, including among them the defendant Cupples Company, had since the first hearing, complied with all the requirements stated, and in conclusion he advised the Mayor that all of them named were entitled to permits to construct underground conduits. We are not quoting this as controlling on the courts, but as throwing some light on the executive view of what was necessary to compliance with the law.

It is claimed by learned counsel for the appellant that the Keyes Ordinance has nothing to do with over-

head wires.   Judge McQuillin did not agree to this proposition, nor do we.   Section 604, repeated again in the Keyes Ordinance, with slight verbal change, specifically refers to wires, tubes or cables conducting or transmitting electricity along or across any street, alley or public place in the city, which are to be placed above the surface of the ground, requiring them to be secured and placed in such manner as the Board of Public improvements may prescribe.   Furthermore, section 603 of the same article was in no manner amended or repealed, and that section, in so many words, forbids the placing of wires, tubes or cables for the production of light, etc., along or across any of the streets or alleys or public places in the city by any  person, corporation or association not having, previous to the passage of ordinance No. 16,894, accepted and complied with ordinance No. 12,723, unless duly authorized by the Municipal Assembly.   This section is part of article 6, chapter 12, of the revision of 1912.

Section 604-I, Keyes Ordinance, provides:

"Any person or persons, corporation or association, who shall string or cause to be strung any wire, tube or cable above or beneath the surface of any street, alley or public place without a permit, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than fifty dollars nor more than five hundred dollars."

Companies desiring a permit under the Keyes Ordinance are specifically required to accept the terms and conditions of articles 2 and 9, chapter 15, of the Revision of 1907.   Those articles relate almost exclusively to overhead wiring and are very specific regulations of that matter, and when the Cupples Company accepted the provisions of articles 2 and 9, it became subject to the provisions of and entitled to the rights conferred by those articles.   So it cannot be assumed that the Keyes Ordinance related exclusively and entirely to conduits and the placing of wires in them. It most certainly embraced within it the subject of overhead wires within the district designated.   The

sections of article 2, chapter 15, and all of article 9 of that chapter remained in full force after the enactment of the Keyes Ordinance, and each of them treated of overhead wires. For instance, section 607 of the Krum Edition specifically authorized the placing of wires on poles. Section 608 prescribed where the poles should be places—in alleys, if practicable—and section 609 prescribed the dimensions of poles. Article 9 relates to telegraph and telephone poles, all to be "along and across" public streets and alleys. See sections 1186 and following, Rombauer's Edition of 1912, as also section 1243 and following of that edition for these same provisions.

Thus persons and corporations accepting and complying with articles 2 and 9 were "duly authorized to erect and place and maintain overhead wires," otherwise why should they be required to accept those articles?

Criticism is made of the title of ordinance No. 18,680, it being claimed that as the only matter referred to in the ordinance relates to underground wiring, to construe the ordinance as granting rights relating to surface wiring, would extend the ordinance to matters concerning which the Municipal Assembly, under the title of the ordinance, could not have legislated. We do not think this criticism is maintainable. The amendatory ordinance relates to electric wiring. [See St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611; St. Louis v. Warren Commission and Investment Co., 226 Mo. 148, 126 S. W. 166.] Even if section 604 is not to be held as included in the Keyes Ordinance, still there remains enough of that ordinance and in the remaining sections of article II, chapter 15, which was not touched by the Keyes Ordinance to show that the matter of overhead wires was still within the provisions of the ordinance as amended.

Without going further into the matter and attempting to analyze all of the several ordinances, we have concluded that the result arrived at by the learned trial judge is correct and that by acceptance of the

terms prescribed by the Keyes Ordinance within the time there prescribed, and by acceptance of the terms and compliance with the provisions of articles 2 and 9, chapter 15, of the Code of 1895, Ordinance No. 17,188, approved April 7, 1893, within the time' designated in the Keyes Ordinance, that the defendant, the Cupples Station Light, Heat and Power Company, was authorized to erect poles and string wires thereon in the district' in which it proposed to erect those poles, that district being outside of the restricted district, and that the judgment of the circuit court in dismissing the bill was correct.

It follows that that judgment should be, and it is, affirmed.

*Allen* and *Becker, J.'J.,* concur.

