# CITY OF ST. LOUIS v. WARREN COMMISSION AND INVESTMENT COMPANY, Appellant.

**Divison One, March 1, 1910.**

1. **ORDINANCE: Fire Doors: Applicability to Existing Buildings.** Section 101 of the Building Code of St. Louis, requiring every building more than three stories in height, above the basement, occupied for manufacturing or mercantile purposes, to have fire doors, blinds or shutters hung at every window above the first story, does not on its face apply only to buildings subsequently erected. Because other sections of the ordinance of which it is a part apply only to such buildings, while others apply to existing buildings, it does not follow that this section, which refers to a certain subject-matter within itself and speaks for itself irrespective of other sections, applies solely to buildings erected after its enactment. It applies to all buildings of the character mentioned.

2. ————: ————: ————: **Occupancy.** The said ordinance does not have reference so much to the time the buildings were erected as it does to their occupancy. It applies to only such four-story buildings as are occupied for particular purposes, and are located within forty feet of another building. Future buildings four stories high may be built, but if not used for manufacturing or mercantile purposes, the ordinance does not apply; or if so used, and yet were forty feet or more away from another building, the ordinance would not apply until such time as another building were erected within forty feet of the four-story building so used.

3. ————: ————: ————: **Validity.** The city has power to enact an ordinance which requires the owner of an existing building to provide fire doors or shutters to windows therein, if such ordinance is reasonable. It is a part of the city's police powers. Protection against ravages of fire may be made, in the interest of public safety, to apply to existing buildings, as well as to buildings subsequently erected.

4. ————: ————: ————: ————: **Power of City to Enact.** The general welfare clauses of the charter of St. Louis (clauses 12 and 14, sec. 26, art. 3) authorize the municipal assembly to enact a reasonable ordinance to prevent the spread of fires in large buildings.

5. ————: ————: **Reasonableness: Judicial Notice: Pleading.** It is not necessary for the courts to take judicial notice that buildings occupied for the purposes mentioned in an ordinance

are sources of danger from fire, where the municipal assembly has passed upon the necessity for the ordinance, and its reasonableness is not challenged in either the pleadings or instructions. The reasonableness of the ordinance which defendant has been convicted of violating is not for consideration unless the point is made issuable by the pleadings and proof.

6. ———: Title: Germane. A title to an ordinance which, among other things, declares its purpose is "the securing of buildings of said city" is sufficiently comprehensive to include a section requiring large manufacturing or mercantile buildings to be provided with fire doors or shutters at windows.

Appeal from St. Louis Court of Criminal Correction. —*Hon. Hiram N. Moore*, Judge.

AFFIRMED.

*Truman P. Young* for appellant.

(1) The ordinance numbered 22022, under which this prosecution was brought, applies only to buildings to be erected in the future. This appears from an inspection of the ordinance itself. See also: De Leone v. Long Branch, 55 N. J. L. 108; Buffalo v. Chadeayne, 135 N. Y. 163; Regina v. Howard, 4 Ont. 377, 4 Am. and Eng. Corp. Cases, 377; Glenn v. Baltimore, 5 Gill and J. 430; Commonwealth v. Alger, 7 Cush. 103; Allison v. Richmond, 51 Mo. App. 136; State v. Tenant, 110 N. C. 618; Louisville v. Webster, 108 Ill. 414; Wadleigh v. Gilman, 12 Me. 403; Klinger v. Bickel, 117 Pa. St. 339. (2) The power to compel a remodeling of existing buildings is not within the charter powers of the city. A municipal corporation can exercise the following powers and no others: First, those expressly granted; second, those necessarily implied in or incident to the powers granted; third, those essential to the declared objects and purposes of the corporation—not simply convenient but indispensable. St. Louis v. Kaine, 180 Mo. 309; St. Louis v. Telephone Company, 96 Mo. 628; Joplin v. Leckie, 78 Mo.

App. 13; City, to use, v. Eddy, 123 Mo. 546; Kansas City v. Swope, 79 Mo. 446; Knapp v. Kansas City, 48 Mo. App. 485; City v. Laughlin, 49 Mo. 559; Butler v. Milwaukee, 15 Wis. 493; Regina v. Howard, 4 Ont. 377; Buffalo v. Chadeayne, 134 N. Y. 166; Newton v. Belger, 143 Mass. 598; Allison v. Richmond, 51 Mo. App. 133; Pye v. Peterson, 45 Tex. 312; Carpenter v. Realty Co., 103 Mo. App. 480; Bostwick v. Sams, 59 L. R. A. 282; Wygant v. McLaughlin, 54 L. R. A. 636; Grossman v. Oakland, 36 L. R. A. 593; Evansville v. Miller, 38 L. R. A. 161. (3) The ordinance if meant to apply to existing buildings is invalid as applied to such buildings because such provisions are not within the scope of the title of the ordinance. Charter, art. 3, sec. 13; State v. St. Louis, 161 Mo. 371. (4) Ordinance 18964 and section 193 of the municipal code were repealed by ordinance 22022 under which this prosecution was brought. They were therefore immaterial and should have been excluded from the evidence. State v. Roller, 77 Mo. 120; Yall v. Gillham, 187 Mo. 393; State v. Hickman, 84 Mo. 79; Kern v. Legion of Honor, 167 Mo. 483; Delaney v. Police Court, 167 Mo. 676; Berkshire v. Railroad, 28 Mo. App. 228; Crumley v. Railroad, 32 Mo. App. 505; Gumm v. Jones, 115 Mo. App. 597.

*L. E. Walther* and *C. P. Williams* for respondent.

(1) The authorities cited by appellant under subdivision one of his brief are not in point, and do not bear upon the proposition involved. The true reading of the ordinance is to make it apply to all buildings, whenever erected, that are used for mercantile or manufacturing purposes. (2) The power to enact is to be found in the charter, art. 3, sec. 26, clauses 12 and 14. The enactment is plainly justifiable as a police measure. (3) The title of the ordinance is sufficient.

GRAVES, J.—This cause originated in the first district of the police court of the city of St. Louis by a statement filed by the city attorney of said city, in which it was charged that the defendant had violated sections 101, 182 and 184 of ordinance No. 22022, approved April 7, 1905. Upon being convicted the defendant appealed to the St. Louis Court of Criminal Correction, wherein he was again convicted, and fined the sum of $25, from which judgment he has appealed to this court.

Defendant is the owner and occupant of a certain building four stories high and used for manufacturing and mercantile purposes. This building was erected prior to 1865. There is no question that the building had not been equipped with the things required by section 101 of ordinance No. 22022, supra. This section is a part of the Building Code of the city of St. Louis and reads:

"Every building more than three stories in height, above the basement, occupied for manufacturing or mercantile purposes, shall have fire doors, blinds or shutters hung to iron hinge eyes or pin blocks built into the wall on every window and every opening above the first story thereof, excepting on openings of buildings fronting on streets or vacant lots which are more than forty feet in width; said doors, shutters or blinds shall be standard; constructed of pine or other soft wood of two thicknesses of matched boards at right angles with each other and securely fastened and covered with tin or galvanized iron on both sides and edges, with folding lapped joints; the nails for fastening the same shall be driven inside the lap. The hinges and bolts or latches shall be secured or fastened to the door or shutter by bolting after the same has been covered, and such door or shutter shall be hung independent of the woodwork of the windows and doors and to be of sufficient area to lap two inches all around such opening. Sliding shutters of the above construction

may be used instead of hinged shutters, of such mechanism as may be approved by the commissioner of public buildings. They shall in any case comply with all requirements provided for standard hinged fire shutters. In lieu of standard fire doors and shutters wherever mentioned in this ordinance, approved metal frames of adequate strength, with wire glass panels in same may be used. It shall be the duty of the commissioner of public buildings to require fire doors, blinds or shutters, as provided in this section, to be placed on the openings of buildings in cases where lots which were vacant when the buildings were constructed are built upon, so that said openings come within forty feet from any building.''

The case was tried upon an agreed statement of facts, which is not necessary to set out here, for the reason that the defendant is guilty, if the ordinance is valid, and if the ordinance applies to the building in question under the facts. The contention of the defendant is three-fold, and is well stated in the brief thus:

''The evidence showed that the building in question was erected in Saint Louis prior to 1865. Ordinance No. 22022, under which this prosecution was brought, was passed on April 7, 1905. It was contended by the defendant at the trial that this ordinance applied only to buildings erected after its passage. In the first place, that the ordinance on its face applied only to such buildings; in the second place, that the city has no powers under its charter to pass such an ordinance and make it applicable to buildings already constructed, and in the third place, that the title of the ordinance refers only to buildings to be erected in the future, with certain exceptions not applicable here.''

Of these questions in their order.

I.   The point first urged is that upon its face the ordinance in question does not apply to buildings theretofore erected.   Ordinance No. 22022 is composed of one hundred and ninety-seven sections, referring practically to as many different things.   It is the Building Code of the city of St. Louis.   Many sections out of the number contained in the ordinance clearly refer to buildings to be constructed in the future, and many more refer to buildings theretofore constructed. It would be an unwarranted task to set out and describe the different sections of these two classes.   The question is what does this section 101 mean?   To what buildings does it apply?   It refers to a certain subject-matter within itself and speaks for itself irrespective of other sections of the Building Code.   But little light can be gathered by comparing its phraseology with that of other sections clearly pointing to buildings to be erected in the future, as learned counsel have elaborately and painstakingly done.   Whether this particular section refers to prior constructed buildings must be gathered largely from its own context.   We are impressed that it applies to all buildings whether erected prior or subsequent to the passage of such ordinance, if the size of the building and the occupancy of the building brings it within the purview of the ordinance. It will be observed that the section under review does not apply to all four-story buildings, but only to such four-story buildings as are occupied for particular purposes, and as are located within forty feet of another building.   Future buildings four stories in height may be built, but if not used for mercantile or manufacturing purposes the ordinance would not apply.   Or if they were so used, and yet were forty feet or more away from another building, the ordinance will not apply, until such time as another building was erected so as to be within forty feet of the four-story building

thus used for mercantile or manufacturing purposes. This ordinance does not therefore apply so much to the time the building was erected as it does to the occupancy of the building. The present building, now under discussion, may by reason of its occupancy be subject to the provisions of the ordinance this year, but next year the character of its occupancy might be so changed that the ordinance would not apply. The ordinance therefore strikes at the danger of fire by reason of the particular occupancy of such a building, rather than at the date of its erection. To guard against fires and the destruction of property is one of the police powers of a city. We see no reason why a city cannot pass an ordinance by which it shall say to the citizen, If you own a building of a certain character, and use it for certain purposes, which purpose would indicate that damaging fires might result, without such precautions as are prescribed by this ordinance, then you must take such precautions in order to protect both life and property. Such an ordinance is a reasonable police regulation, well calculated to promote the general welfare of the citizens. We conclude therefore that this ordinance refers more to the question of how the building is occupied than to the date of its erection. This occupancy may change from year to year. If the occupancy be a hazardous one, the city can act. The ordinance in our judgment applies to all four-story buildings occupied as this building was occupied. It applies to such as were so occupied at the date of its passage, as well as to such as may be thereafter so occupied, irrespective of the date of construction. This point is therefore ruled against the defendant.

II. The second question, as indicated by the quotation from appellant's brief, is that if the ordinance upon its face shows that it was intended to apply to buildings then constructed, yet the city had no power

to pass such an ordinance. In the preceding para-
graph we have indicated that in our judgment the
ordinance upon its face shows a legislative intent to
apply the ordinance to all four-story buildings used
for the purposes mentioned. We have like'wise prac-
tically indicated that such an ordinance is authorized
under the police power of the city. The safety of life
and property as against the ravages of fire has always
been a live question in municipalities. The city govern-
ment has to deal with the question not from the stand-
point of the individual owner of a particular property,
but from the standpoint of the general welfare of the
city and its citizenship. Ordinarily, the citizen has
the right to use that which is his own, in such a man-
ner as he pleases, but if the use thereof seriously
affects the general public, society and the laws thereof
demand a surrender of a part of the individual rights
for the general welfare of the public, for such is the
basis of all government. Absolute individual rights
is anarchy. So that we say that in cities fire limits
may be established, and thereafter certain character
of buildings must be erected—a limitation upon the
broad individual rights of the citizen to use his own
property as he pleases. So, too, we say to the owner
of property in a municipality, "Many things must be
done by you to the end that the general welfare may
be promoted." An enumeration would be superfluous.
Appellant, however, asks that we point to charter
power for the ordinance in question. If it be necessary
to go further than the police power under the general
welfare clause, we think that such power is found in
clause 12, of section 26, article 3, of the St. Louis
charter. So far as applicable, this clause reads:

"The Assembly through its officers or agents, may
at all reasonable times, enter into and examine all
dwellings, lots, yards, enclosures and buildings of every
description, to ascertain their condition for health,
cleanliness and safety; take down and remove build-

ings, walls, or superstructures that are or may become dangerous, or require owners to remove or put them in a safe and secure condition, at their own expense.'' In the same clause we find further the following language: ''.  .  . shall provide for the safe construction, inspection and repairs of all private or public buildings within the city.'' The general welfare clause, which is numbered fourteen, reads thus: ''Finally, to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient, in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fines and penalties, not exceeding five hundred dollars, and by forfeitures, not exceeding one thousand dollars; to purchase, rent, or lease, within the limits of the city or elsewhere, any real or personal property, and to control, manage, sell or lease, or otherwise dispose of the same, for such purposes and considerations as they may deem proper for the public welfare of the city, and to provide for the enumeration of the inhabitants of the city.''

That buildings occupied for the purposes mentioned in the ordinance are sources of danger from fire might be judicially noticed. That fires from adjoining or near-by buildings might injure both property and life in such buildings we might likewise judicially know. That the inflammable material contained in such buildings would render the spread of fire more hazardous, we would likewise know. This, however, we do not have to know in this case, because the legislative branch of the city government which has the first right to pass upon the necessity of the ordinance, has passed upon it, and in the record here, it is not challenged on the ground of unreasonableness. The challenges below were by instructions asked and refused, neither of which raises the question of the unreasonableness of the ordinance. Without such plead-

ing or proof that is not a question which concerns us now. [St. Louis v. St. Louis Theatre Co., 202 Mo. 690.]

We think there was a right upon the part of the city to pass this ordinance and further to make it apply to buildings of the character named, so far as this record shows.

III. Third, and lastly, it is contended that the title of the bill refers only to buildings to be erected in the future, with certain exceptions, of which this is not one, and therefore this portion of the bill is void. The title to the bill out of which grew ordinance No. 22022, reads:

"An ordinance to revise the building code of the city of St. Louis, being article 4, chapter 1 of the municipal code, by repealing sections 38 to 253, inclusive, of said article, and enacting in lieu thereof a new ordinance governing the construction and erection, reconstruction, alteration, repair, remodeling, changing, moving, removal, and securing of buildings in said city, and providing for the safety of buildings when so erected; also regulating the use of and providing for the safety of the public in theatres, opera houses and other buildings devoted to public amusement."

We cannot lend our consent to this contention. The subject-matter of section 101 of the bill is germane to the subjects mentioned in the title above quoted. The title speaks of the enactment of a new ordinance, and in so speaking says, "and enacting in lieu thereof a new ordinance governing the construction and erection, reconstruction, alteration, repair, remodeling, changing, moving, removal *and securing of buildings in said city.*"

We have italicized one clause of this title which clearly authorizes the said section 101. It will not do to say that the portion italicized and reading *"and securing of buildings in said city,"* refers solely to buildings thereafter to be constructed. Nor will it do

to say that it precludes reasonable legislation as to the occupancy and use of buildings theretofore constructed. These clauses of the title are but indexes to the bill, and all things germane thereto may follow in the bill itself. We are not impressed with the contention of the appellant. These are the only questions raised below, and of course the only questions to be considered here.

From this it follows that the judgment below is right and should be and is affirmed. All concur.