I. M. Lux v. Milwaukee Mechanics Insurance Company, Appellant.—16 S. W. (2d) 595.

Court en Banc, March 27, 1929.

*Fyke, Hume & Hall* for appellant.

*Frank M. Lowe, I. M. Lux* and *John D. Wendorff* for respondent.

FRANK, J.—Plaintiff brought suit March 15, 1918, upon a fire insurance policy, for the destruction of a dwelling house. He re-

covered judgment for $3500, the full amount of the policy, together with interest thereon to September, 1927, the date of the trial, amounting in all to $5499.38.

Plaintiff's petition alleges that on January 30, 1918, while the policy of insurance was in force, his house located at 3604 Thompson Avenue, Kansas City, Missouri, was destroyed by fire; that it was burned in such manner that the outside and frame work remained standing after the fire; that on or about February 15th, plaintiff received a notice from the Superintendent of Buildings of Kansas City, Missouri, directing him to tear down the building at once, and in accordance with the notice he tore it down.

Plaintiff introduced in evidence Section 8 of Ordinance 38919 of Kansas City, as follows:

"The Superintendent of Buildings shall have full discretionary powers of declaring to be a public nuisance, any building, any structure or part thereof that is unsafe as to fire or for the purpose used or has become unsafe from fire, decay or other causes and shall institute such proceedings and take such steps as may be necessary for the immediate abatement of any and all such nuisances."

Defendant's objection to the introduction of the ordinance was overruled.

Ordinance No. 255 was introduced over the objection of defendant. This ordinance provides that any occupant of a building who fails to comply with a notice given him by the Superintendent of Buildings, requiring him to tear down a building, should be guilty of a misdemeanor. The notice which plaintiff received from the Superintendent of Buildings, directing him to tear down the house, was received in evidence over defendant's objection. Evidence showing what the Superintendent of Buildings found when he inspected the house was also introduced in evidence over the objection of defendant.

Defendant offered to show that the damage to the building, and the amount necessary to repair it, was $1403. This offer was rejected.

Defendant alleged in its answer that the ordinances in question were unconstitutional and void, and objected to their introduction in evidence on that ground. Hence the jurisdiction of this court.

Plaintiff's contention is that the Superintendent of Buildings was authorized to order the building torn down, and destruction of the building in pursuance to his order made it a total loss to him, whether in fact the building was entirely destroyed by fire or not.

The theory of this contention is that the ordinances in question were a part of the contract of insurance and that defendant is bound by their provisions. This claim is in accord with the general doctrine that where parties contract with reference to a subject which is

hedged about by statutory provisions, they are presumed to have made the contract in view of such statutes, and the same becomes a part of their contract.

Defendant does not dispute this proposition of law, but contends that the ordinances are unconstitutional and void, and for that reason are not part of the contract of insurance and not binding on either party.

If defendant had expressly agreed that in case plaintiff's building became unsafe from fire, the Superintendent of Buildings should have full discretionary power to declare it a public nuisance and order its destruction, a different question would be presented. Defendant made no such agreement. While the law presumes that defendant had knowledge of all existing ordinances touching the subject of its contract, there is no presumption that it agreed to be bound by the provisions of an unconstitutional ordinance.

The ordinance in question clothes the Superintendent of Buildings with full discretionary power to declare any building which becomes unsafe from fire to be a public nuisance and authorizes him to take immediate steps to abate such nuisance.

There is no doubt that the Common Council of Kansas City has both express and implied power to declare what shall be a nuisance within the city limits, subject, of course, to the limitation that it has no authority or power to declare that to be a nuisance which in fact is not a nuisance (St. Louis v. Dreisoerner, 243 Mo. 217, and cases cited), but the ordinance in question does not declare what conditions or circumstances will render a building unsafe, and does not fix any standard or rule for the guidance of the Superintendent of Buildings in determining whether or not a building is unsafe and therefore a nuisance, but leaves the determining of these questions to the unbridled discretion of an administrative officer.

The general rule is that any ordinance which attempts to clothe an administrative officer with arbitrary discretion without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer and for that reason is unconstitutional. [Hays v. Poplar Bluff, 263 Mo. 516; Ex parte Cavanaugh, 313 Mo. l. c. 381; City of Shreveport v. Herndon, 105 So. 244, and numerous cases cited; People v. Sholem, 294 Ill. 204, 128 N. E. 377.]

Since the ordinance under consideration falls within the prohibition of this general rule, it is unconstitutional and therefore void, unless it comes within one of the exceptions to this rule. The exceptions to the general rule are in situations and circumstances where necessity would require the vesting of discretion in the officer charged with the enforcement of an ordinance, as where it would be either impracticable or impossible to fix a definite rule or standard, or

where the discretion vested in the officer related to the enforcement of a police regulation requiring prompt exercise of judgment.

The ordinance does not come within either of these exceptions.

It would have been both possible and practical for the Common Council to have fixed a standard in this ordinance for the guidance of the Superintendent of Buildings in its enforcement. If, for instance, the ordinance had provided that the Superintendent of Buildings should have discretionary power to order the destruction of a building which had been damaged by fire, where the walls were left standing, and were so situated and in such condition that they were liable to fall upon and injure persons passing by, or fall upon and damage or destroy adjacent property before the owner would have either time or opportunity to repair the house, such provision, as well as others that might have been made, would have furnished a rule or guide for the officer charged with the enforcement of the ordinance, from which he could have determined whether or not it would have been a violation of the ordinance to let the building stand. Such an ordinance would be valid. A city council has power to delegate to an administrative officer power to determine when the provisions of an ordinance are being disobeyed. [City of St. Louis v. Kellmann, 243 S. W. 134; Spiegler v. City of Chicago, 216 Ill. 114, 74 N. E. 718; People v. Robertson, 302 Ill. 422, 134 N. E. 815, 22 A. L. R. 835.]

Speaking to a like question in Crossman v. City of Galveston, 247 S. W. 811, 814, the Supreme Court of Texas said,

"We are not to be understood as holding that a municipality cannot enact a valid ordinance providing for the summary abatement, without the necessity of a judicial hearing, of certain classes of nuisances. On the contrary, we recognize the general doctrine that in the case of a public emergency—as, for example, a fire, or raging pestilence, or other threatening public calamity, presenting an imminent and controlling exigency, before which, of necessity, all private rights must immediately give way—a municipality may summarily destroy property to abate or prevent the impending injury. [Stockwell v. State, supra; Keller v. City of Corpus Christi, 50 Tex. 614, 32 Am. Rep. 613.]"

The owner of a building has vested property rights therein which cannot be summarily destroyed under the guise that the building is a nuisance, except in cases of great emergency. In Wood on Nuisances, section 7, it is said:

". . . Therefore, except in cases of great public emergency, when the emergency may safely be regarded as so strong as to justify extraordinary measures upon the ground of paramount necessity, or when the use of property complained of is so clearly a nuisance as to leave no room for doubt upon the subject, it is the better course to

secure an adjudication from the courts before proceeding to abate it. . . .''

A building may become unsafe from fire, decay or other causes, and yet the danger from such unsafe condition may not be imminent or threatening. If, under such circumstances, the unsafe condition of the building could be remedied by repair, the owner of the building should be given an opportunity to make such repairs before his property is destroyed. In Crossman v. City of Galveston, supra, it is said,

''The power given municipalities to abate nuisances is not an unrestricted power. The abatement must be limited to the necessity of the case, and no wanton or unnecessary injury to the property or rights of individuals must be permitted. While a building may be destroyed under certain circumstances, or if erected in violation of a valid ordinance, yet, if lawfully erected, as in this case, it cannot be demolished if the nuisance alleged against it can in any other way— as, for example, by cleaning, disinfection or repair—be abated. [Joyce on Nuisances, Secs. 346, 349, 350; Miller v. Burch, 32 Tex. 209, 5 Am. Rep. 242; Health Dept. v. Dassori, 21 App. Div. 348, 355, 47 N. Y. Supp. 641.] The building here involved having been lawfully erected, if the nuisance charged against it may be abated by repair, then that remedy should be first awarded.''

We are not holding that a city may not provide by ordinance the circumstances and conditions which would create an emergency justifying the summary destruction of property in order to protect the lives and property of citizens from an imminent and threatening danger. We recognize that this may be done by a valid ordinance. What we do hold is that the determination of what conditions and circumstances would create such an emergency, is a legislative function, to be exercised by the council and not delegated to an administrative officer.

There is no evidence in the case tending to show that the condition of the house was such that its destruction was necessary to avoid threatened injury to either persons or property.

It is our conclusion that the ordinance under which the Superintendent of Buildings acted in ordering the house torn down, is unconstitutional and void, and that the act of plaintiff in tearing it down was voluntary and, therefore, not binding on defendant.

In event of a retrial of the case, the issue of total destruction of the house by fire so that it lost its identity and specific character as a dwelling house, should be submitted unembarrassed by any destruction under orders of the Superintendent of Buildings.

Judgment reversed and cause remanded. All concur, except *Walker, J.,* who dissents.