**TEBBETTS et al. v. McELROY, City Manager, et al.**

No. 1865.

District Court, W. D. Missouri, W. D. March 1, 1932.

Cyrus Crane and Richard Righter (of Lathrop, Crane, Reynolds, Sawyer & Mersereau), both of Kansas City, Mo., for petitioners.

George Kingsley, City Counselor, and Marcy K. Brown and Joshua Barbee, Asst. City Counselor, all of Kansas City, Mo., for defendants.

OTIS, District Judge.

The plaintiffs are and for several weeks have been engaged in conducting what is called by them a "walkathon," which appears to be a species of endurance contest. They have offered a prize of $1,000 to that couple, man and woman, that longest continues walking. In each hour of every day the contenders walk three-quarters and rest one-quarter of the hour. They walk around and around in a small rectangular space about which, on three sides, grand stands have been erected. To these spectators are admitted. The enterprise has turned out to be profitable to the plaintiffs. Marvelous to say, people seem to be entertained by the spectacle and are willing to pay for their entertainment.

The contest was initiated in a building at least semifireproof in construction with the full knowledge and consent of the municipal authorities of Kansas City. That consent was sought in advance by the plaintiffs, who contemplated investing and did invest $15,000 in the enterprise. Extraordinary precautions were taken against possible dangers of any kind. The plaintiffs did everything they were asked to do. During the time the contest has been going on representatives of the various departments of the city government have visited it frequently. The plaintiffs had received no intimation from any of them that anything was wrong with the contest or with the arrangements under which it was conducted. Although the contest had been in progress for almost three weeks, not the slightest suggestion that there was a fire hazard incident to the enterprise had been made to the plaintiffs by any one connected with the city.

On February 22, 1932, one of the defendants, Dr. Lee Johnson, the director of the fire department, visited the building where the "walkathon" is held. He found the grand stands filled with spectators. He surveyed the premises. After his inspection he suggested to the plaintiffs that a rope barrier be moved a short distance. It was promptly moved.

On the evening of February 23, 1932, this defendant, accompanied by certain others of the defendants, returned. The grand stands again were filled. Nearly two thousand persons who had paid admissions were in their seats.

The defendants looked about a little, summoned the plaintiffs, peremptorily ordered them to get the audience then in attendance out of the building within five minutes, to close the place to the public and to keep it closed, and threatened them with arrest and imprisonment if they did not instantly comply with these directions. The place was emptied promptly and admission prices were returned.[1]

The present bill was filed February 24th. On the same day, after notice, a restraining order was issued. The plaintiffs' application for a temporary injunction was set for hearing on February 25th. At the request of the defendants the hearing was postponed until February 26th. Evidence was heard on February 26th and February 27th. The matter was submitted.

■ 1. It goes without saying that no individual as such lawfully may destroy the business of another by threat or use of force.

■ 2. To any one who has the slightest knowledge of the provisions of the Constitution it need not be said that neither the government of the United States nor that of any state nor that of any subdivision of any state may deprive any person of liberty or property without due process of law.

■ No servant of the people in public office arbitrarily may say to any person, "Your business is closed." Not all the forces of government may lock the door of the humblest shop save in accordance with the law of the land, for "this is a government of laws and not of men."

These principles, which are founded in natural justice, already were old when Magna Charta. was wrested from a tyrant king. They are written in the Bill of Rights of every nation of freemen.

■ 3. Learned counsel for defendants do not question these principles, but they say there is a statute somewhere, some provision of the city charter, some ordinance, that vests the director of the fire department in Kansas City with the power immediately to close any place of business, any hall, or building where people may assemble, if, in his judgment, danger from fire exists in that place, that hall, that building. In effect they say that by virtue of this law this official may go into a mercantile establishment, look about awhile, and seeing goods upon the shelves which, if fired, will burn, seeing counters and floors of wood, seeing the aisles crowded with customers, as at the Christmas season, conceiving in his mind there is a fire hazard present, may send for the proprietor and tell him to get his customers out at once and to lock his doors. He may go into a church, crowded with worshipers, perhaps beyond the seating capacity of the church, and if he thinks there is a fire hazard there, may interrupt the clergyman in the middle of his sermon, drive the congregation into the street, and decree that the edifice may not be used again for religious worship.

The simple answer to all of this is that there is no statute, no charter provision, no ordinance, expressly or by implication, vesting this official or any other with any such power as this.[2]

---

[1] Subsequent to the closing of the plaintiff's business, certain officers of the city made inspections to discover whether all the provisions of the building code had been complied with. This was a sort of post mortem examination of the situation. The discoveries resulting from it, that in some respects the building code had not exactly been complied with, are urged now by way of ex post facto justification for the closing order. It is sufficient to say that nothing in the building code authorizes any summary action if it is found that some of the terms of the code have not been complied with. All that is authorized is the institution of proceedings either to effect remedies or to punish violations.

[2] The defendants cite no legislation vesting the director of the fire department with the authority it is asserted he possesses. The only enactment to which they point at all is section 31 of article 3 of the Charter of Kansas City. It is provided in that section that: "The Director of the Fire Department shall have charge of the prevention and suppression of fires and of all employees, buildings and equipment used for this purpose. The fire chief or any assistants in charge of any fire, shall have the same police powers at such fires as the Chief of Police under such regulations as may be prescribed by the ordinance. He shall have power to order the destruction of any building, structure, fence or thing if he shall deem it necessary for the purpose of checking the progress of any fire."

This section lends no support whatever to the asserted power. . On the contrary, a reading of it demonstrates that the Legislature had no intention of conferring on the director of the fire department so extraordinary a police authority as that it is contended he has. The section expressly provides that even the police powers of the fire chief and his assistants actually in charge of a fire in prog-

The utmost of summary authority which any officer of any fire department ever has been given is to order the evacuation of a building when a fire already has begun. In Kansas City the fire chief (not the director of the fire department) may order the destruction of a building, although it is not yet touched by fire, if it is in the path of a present conflagration, the spread of which it is likely to promote. But nowhere in the books do I find any reference to any legislative act which vests an administrative officer with authority to order immediate discontinuance of any lawful use of any building if only he imagines there might be in that building a fire at some future time. What a deadly weapon of oppression such a legislative act, if there were one, would be! If such a law could anywhere be found it would be no law,

so plainly would it contravene the supreme law of the Constitution.[3]

The plaintiffs are nonresidents of Missouri. The amount involved exceeds $3,000. This court has jurisdiction. The plaintiffs have no adequate remedy at law. It is a case therefore in which they are entitled to relief in equity.

There was some suggestion in the argument of this matter that were an injunction granted as prayed here the court would be responsible for possible eventualities. But courts are responsible only for an honest interpretation and impartial application of the law. The sovereign will which made the law is responsible for its results. The suggested eventualities, moreover, seem of a possibility most remote. Ordinary care and precaution will prevent them. These will continue to be

---

ress shall be such only as are vested in the chief of police of the city and that they shall be exercised under such regulations as may be prescribed by ordinance. Applying to this section the well-recognized canon of construction, expressio unius exclusio alterius est, it is clear that the director of the fire department is denied even the authority to order the destruction of a building or "a fence or thing" in the face of an actual present conflagration. That authority is given only to the fire chief, an entirely different, although subordinate official. Certainly this denial to the director of the lesser power of ordering the destruction of buildings in the face of a present fire is the denial of the greater power of summarily ordering buildings closed to legitimate business enterprises, not only when there is a fire, but whenever in his sole judgment there is a fire hazard present.

The only case which defendants cite in support of what is here contended for by them is Eichenlaub v. City of St. Joseph, 113 Mo. 395, 21 S. W. 8, 9, 18 L. R. A. 590. The case is not in point. It involves the validity of an ordinance adopted pursuant to a provision of the charter of the city of St. Joseph, Mo., authorizing the mayor and city council by ordinance "to regulate, restrain, or prohibit the erection of wooden buildings within such limits as may be prescribed by ordinance, and to provide for the removal of the same at the expense of the owners thereof, when erected and suffered to remain contrary to the ordinances of the city."

An ordinance was adopted prohibiting the erection of wooden buildings within certain limits and authorizing the mayor, in the event a building was erected in violation of that provision, to order the building taken down, and if that was not done within forty-eight hours to cause the building to be removed. The validity of this ordinance, which was enacted within the express authority conferred upon the mayor and council by the city charter, was upheld by the Supreme Court of Missouri. This ruling, sustaining what was done in exact accordance with the provisions of an ordinance clearly and specifically authorized by the charter, lends no support to the act of an official which is authorized neither by ordinance nor charter.

The general language in the decision that "where a municipal corporation has the power to prohibit the construction of wooden buildings in a district defined by ordinance and has an enacted ordinance to that effect. it may remove any building erected in violation of the ordinance and this too without any judicial proceedings whatever," gives no color of support to the doctrine urged by the defendants here. It is one thing to prescribe by law a general rule and then to authorize an administrative officer

to apply that rule to facts. It is a situation wholly different in which an administrative officer claims authority both to make a rule and then to apply the rule which he has made.

[3] Even if there were authority in the charter of Kansas City purporting to authorize what the director of the fire department undertook to do in this case, or if some ordinance undertook to give him that authority (and we have seen there is neither such charter provision or such ordinance), they would contravene the due process clause of the Fourteenth Amendment. As the Supreme Court put it in Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, the Fourteenth Amendment does not "leave room for the play and action of purely personal and arbitrary power. * * * The fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts bill of rights, the government of the commonwealth 'may be a government of laws and not of men.' For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

It was held by the Supreme Court of Missouri in Hays v. Poplar Bluff, 263 Mo. 516, 173 S. W. 676, 679, L. R. A. 1915D, 595, that the Legislature could not confer upon a municipality the right to order, even by ordinance, the removal of a building on the ground that it was constructed of combustible materials and a fire hazard and in that connection said: "If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without question, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the city authorities, it is invalid, because it fails to furnish a uniform rule of action and leaves the right of property subject to the will of such authorities, who may exercise it so as to give exclusive profits or privileges to particular persons."

If the legislative body of the city may not enact an ordinance directed at a specific piece of property, how much less may a mere administrative officer make a rule applicable to a single place of business and then himself summarily enforce that rule against that place of business.

exercised by the government of the municipality. If a volunteer fire company in a little town would not refuse to perform its proper function unless it could also regulate the lawful activities of citizens, it is not to be assumed that in a great city the protection for which the people pay and to which the law entitles them will be denied them unless they will surrender their constitutional rights to those they have selected as their servants.

A temporary injunction will issue. It is not intended to and will not prevent any supervision or inspection provided for by the laws of Kansas City. Nobody will be protected by this injunction from arrest and prosecution in the proper courts on charges of violation of any state law or city ordinance. It protects these plaintiffs only against an arbitrary destruction of their business. Before their business may be destroyed, they must be accorded a chance to be heard in a court of justice having jurisdiction of the cause.

It is so ordered.