ARTHUR F. D. KALBFELL and MARIE K. WIMBERLY, Partners Doing Business as ROBIN THEATER, Appellants, v. CITY OF ST. LOUIS, a Municipal Corporation, A. P. KAUFMANN, Mayor of the City of St. Louis, CHARLES J. RILEY, Director of Public Safety of the City of St. Louis, ALBERT H. BAUM, Building Commissioner of the City of St. Louis, JEREMIAH O'CONNELL, Chief of Police of the City of St. Louis, and WALKER H. KAMMANN, Fire Marshal of the City of St. Louis.—No. 40502.—211 S. W. (2d) 911.

Division Two, May 27, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, June 14, 1948.

*Alfred L. Grattendick* and *Malcolm I. Frank* for appellants.

988

*George L. Stemmler, John P. McCammon* and *Frank A. Neun* for respondents.

[912] BOHLING, C.—Arthur F. D. Kalbfell and Marie K. Wimberley, partners operating a moving picture or cinema business under the name of Robin Theater in the City of St. Louis, instituted this action April 25, 1947, against the City of St. Louis, the Mayor, the Director of Public Safety, the Building Commissioner, the Chief of Police, and the Fire Marshal of said City, to enjoin defendants from closing said theater and also to enjoin defendants from demolishing the building under a notice of condemnation issued under the new Building Code of said City. The Robin Theater was closed by municipal officials for use as a motion picture theater on April 6, 1947, because the continued occupancy of the structure as a motion picture theater conflicted with Building Code provisions safeguarding the public against hazards of fire or panic; and another order, issued April 16, 1947, condemned the building, stating it was a Class VI structure under the Building Code and, unless it be made safe or removed within three days, city officials would remove it and place a lien against the property for the expense incurred. Plaintiffs' bill was dismissed. They appeal, claiming the property to be worth approximately $30,000 and that they are being deprived thereof without due process of law and denied the equal protection of the law in contravention of constitutional provisions.

Plaintiffs operated a cinema in the building since they acquired it in 1936. The Robin Theater structure had been in existence [913] for approximately thirty years, was rectangular in shape, seated 500 to 600 persons, and met the building requirements prior to the adoption of the present Building Code. Its framework and walls are of wooden construction, covered with sheet metal. A wall board known as "Celotex," a combustible material, is attached to the sheet metal on the interior and constitutes the surface of the inner wall. We understand the surface of the outer wall is imitation brick. Other features of the structure are not fire proof, but we need not detail them. There was testimony that the building was a Class VI structure under the Building Code but was being used for an occupancy calling for "Fire-protected Structures," a Class I or Class II structure; that it constituted a fire hazard when consideration was given to its occupancy as a cinema; and that it was the only one of like construction of the eighty-nine moving picture theaters in the City.

The existing Building Code of the City of St. Louis is Ordinance No. 43,114 and became effective April 5, 1945. It is lengthy, comprising 582 pages of printed matter; is divided into fourteen principal parts or divisions, with a total of 116 sections and many subsections and subdivisions of subsections. The ordinance specifies conditions, tests, regulations, and other requirements in great detail

relating to buildings within said City. The stated purpose of the Code "is the promotion of the public health, welfare, safety and prosperity . . . " by the establishment of minimum standards for structures of any nature et cetera. Part I, Sec. 1-1-(2). The ordinance is "declared to be remedial and it shall be liberally construed . . . " Part I, Sec. 1-1-(5).

Plaintiffs say the Robin Theater is not a "major theater" under Code definitions. We understand defendants do not dispute this; but they contend that while it does not fall within the definition "Theater, Major" in the Code,[1] it requires a structure qualified to house a major theater, a fire-protected structure. This calls for a consideration of a number of specific Code provisions.

"Part XIII" of the Code covers "Detailed Regulations for Places of Assembly," being Secs. 80 to 91, inclusive. Section 81 thereof is applicable to "Cinemas, or Moving Picture Theaters"; and Sec. 81-1 reads:

"Every structure occupied for the purposes of a motion picture theater, or cinema, shall conform to the particular requirements of this section, which is supplemental to Sections 10 and 11, relating to occupancies, and to other applicable sections.

"Except for the expressed exemptions and the requirements of this section, every structure occupied for the purposes of a cinema shall conform to the applicable requirements of Section 80 for a major theater structure."

Section 80 relates to "Theaters, and Places of Public Assembly Equipped with Stages and Scenery" and Sec. 80-5, so far as material, reads:

". . . All parts of each structure housing a major theater . . . shall be of construction meeting the requirements of Section 22 for a Class I structure if the population thereof exceeds 700 persons, and for a Class II structure if the population is less." If a structure has fixed seats, its "nominal population shall be the full capacity of such occupancy provisions." Part V, Sec. 10-5, Building Code. The Robin Theater requires a "Class II" structure as it seats less than 700.

"Part VI," Secs. 21-27, inclusive, of the Code relates to "Requirements Based on Class of Construction." Section "21-1. Establishment of Classes," classifies all structures hereafter erected into six classes of construction, according to the materials used, "as follows:

"Class I, Fire-protected Structures. Class II, Fire-protected Structures. Class III, Mill Type Structures. Class IV, Ordinary

---

[1] "Theater, Major.—An enclosed place of assembly equipped to provide public entertainment by means of performances on a stage and in which such stage is equipped with dressing rooms, scenery, loft, gridiron, hanging curtains, drops or valances, and other requisites, for major theatrical or operatic productions." Sec. 4, Bldg. Code.

Structures. Class V, Metal Structures. Class VI, Wood Frame Structures.

[914] "Structures of the various classes of construction shall meet the requirements of Section 22 to and including 27, respectively." Other provisions of Sec. 21 require the fire-resistive protection for structural elements of Classes I to IV, inclusive, to conform to Secs. 22-25, inclusive, an the fire-resistance ratings scheduled in Table 21A; and that structures classify within a specified "class" only "when all the requirements for that class are complied with." Table 21A, among other things, requires the "Walls" ("Bearing," "Non-Bearing," "Party" and "Fire Walls") of Class I and Class II structures to have a "Resistance in Hours" of "4".

Section 22 provides specifically detailed requirements for "Class I, Fire-protected Structures"; and Sec. 23 provides similar requirements for "Class II, Fire-protected Structures"; either of which sections require walls, structural framing members, floors and roofs to be of incombustible materials protected to provide fire resistance of not less than required in "Table 21A." The Robin Theater structure does not meet these requirements.

Although the Robin Theater does not fall within the definition in Code Sec. 4 of "Theater, Major," the structure housing the Robin Theater is subject to the provisions of the Code relating to a "major theater structure" by virtue of Code provisions relating to "Cinemas, or Moving Picture Theaters" (Secs. 81-1, 80-5), making major theater structure provisions applicable to "Cinemas, or Moving Picture Theaters."

▉ Plaintiffs argue that Sec. 10-2 of the Building Code, requiring structures housing specified occupancies to meet Code requirements after two years, is unconstitutional and, whether unconstitutional or not, that Sec. 1-3-(10) permits structures existing at the time of the enactment of the Code, such as and including the Robin Theater, to continue as theretofore unaffected by the Code provisions. We need not inquire into the constitutionality of Sec. 10-2 if it is not applicable.

"Part V" of the Code is entitled: "Requirements Based on Occupancy," being Secs. 10 to 20, inclusive. Section 10-2, relating to "Continuance of Occupancy of Existing Structures," briefly stated, authorized the continuance "without prejudice or restriction of usage" of the "occupancy" and "facilities" existing at the time of the adoption of the Code that conformed with structural requirements superseded by the Code as long as the character of the "occupancy" was not changed; "excepting structures housing occupancies of subgroup A-1 or A-2." Paragraphs three and four of said Sec. 10-2 relate to Group A-1 and Group A-2 occupancies. The Robin Theater

classifies under Group A-2.[2] Paragraph three permitted the continuance of Group A-1 or Group A-2 occupancies in existing structures for two years.[3] Paragraph four, material here, provided:

"A Group A-1 or A-2 Occupancy may be continued in an existing structure for a period of more than two years from the date of adoption of this Code provided its facilities, safeguards and means of exit are changed within two years from such date of adoption to secure substantially such degree of safety against the hazard of fire [915] or panic as is afforded by a structure hereafter erected for like occupancy in conformity with this Code."

"Part I" of the Code (Secs. 1 to 3) is entitled "Administrative." Section 1-3, relating to "Permits for Construction and Installation," requires under Sec. 1-3-(1) a permit from the proper official (usually the Building Commissioner) for the alteration, repair, erection, et cetera, of structures, et cetera, governed by the Code; and Sec. 1-3-(10) thereunder, so far as material, reads:

". . . Structures of any type existing at the time of enactment of this Code, and structures for which at that time permits have been issued, shall not be required to be changed in construction or in the occupancy or use designated therefor in such permit, under the two following conditions: . . . [The conditions specified are unimportant here.]"

Other reasons may be advanced, but specific Code provisions rule the contention of conflict against plaintiffs; because Sec. 1-1-(3) specifically distinguishes between general sections or divisions and particular sections or divisions of the Code in that the former applies "in common to more than one class or type of structures, occupancies or other matters" whereas the latter applies "to a single class or type"; and Sec. 1-1-(4) provides: "In any instance of conflict be-

---

[2]Said "Part V" classifies structures, existing as well as those thereafter erected, into Classes of A to J occupancy, in accord with the class of structure "it most nearly resembles on the basis of life and fire hazard" (Sec. 10-1 of the Code); and so far as here material provides:
"Section 11. Group A Occupancies.
"11-1. A Occupancies.
"Shall include structures used for public assembly as listed and classified by seating capactiy under Divisions A-1 and A-2 . . .
"Occupancy A-1 shall include:
"Major Theaters:
 Cinemas—with seating capacity exceeding 700
 Coliseums—with seating capacity exceeding 1500

"Occupancy A-2 shall include:
 Cinemas—with seating capacity of 700 or less
". . ."

[3]"An occupancy of Group A-1 or Group A-2 may be continued in an existing structure for a period of two years from the date of adoption of this Code, provided the existing structure and its exits and other facilities are at such time in full conformity with the requirements of codes and ordinances superseded by this Code."

tween the requirements of a general division of this Code and those of a particular division thereof, the requirements of such particular division shall have precedence . . . " Paragraphs three and four of Sec. 10-2 relate to structures sheltering Group A-1 or Group A-2 occupancies; and being particular have precedence under the Code over the general provisions of Sec. 1-3-(10). Thus, structures housing cinemas are required to meet the Building Code provisions at the expiration of two years, and there is no conflict between ordinance provisions in this respect.

But plaintiffs contend Sec. 10-2 is unconstitutional in that it vests an arbitrary discretion, without establishing a standard for guidance, in the Building Commissioner to determine what the meaning is of "facilities" and "safeguards" and what constitutes "substantially" within the provisions of the fourth paragraph of said Sec. 10-2. Plaintiffs cite Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 346, 15 S. W. 2d 343, 345[2-4], 16 S. W. 2d 595; St. Louis v. Polar Wave Ice & F. Co., 317 Mo. 907, 915, 296 S. W. 993, 996, 54 A. L. R. 1082; State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 335, 196 S. W. 2d 296, 298; Hays v. Poplar Bluff, 263 Mo. 516, 534, 173 S. W. 676, 679.

The difficulty usually experienced in ruling the instant issue is the application of the law, which is fairly well settled, to the facts. Generally speaking, an ordinance vesting an arbitrary discretion in public officials with respect to the usual rights, property or business of citizens, without prescribing a uniform rule of action for all of the class to which it is intended to apply and without furnishing definite conditions, regulations, tests or standards with which all might comply and also for the guidance and control of the officers, is unconstitutional and void. There are exceptions to the general rule where situations require the placing of some discretion in the officers or the discretion relates to the administration of a proper police regulation. The tendency is to extend the discretion reposed in officials to meet the growing complexities of life, the multiplication of such regulations, and the increased difficulty experienced in administering the laws, especially in crowded metropolitan areas. This is recognized in defendants' cases of Lux v. Milwaukee Mechanics' Ins. Co., supra; St. Louis v. Poplar Wave Ice & F. Co., supra. Consult Cavanaugh v. Gerk, 313 Mo. 375, 382, 280 S. W. 51, 53; Fred Wolferman Bldg. Co. v. General Outdoor Adv. Co. (Mo. App.), 30 S. W. 2d 157, 160[2, 3]; 11 Am. Jur. 945, secs. 232 et seq.; 37 Am. Jur. 778, sec. 160; 16 C. J. S. 337 et seq.; particularly secs. 133(a), 138, 178; 43 C. J. 239, secs. 237-242. Annotations, 12 A. L. R. 1435; 54 A. L. R. 1104; 92 A. L. R. 400.

Aetna Ins. Co. v. Hyde, 34 F. 2d 185, 193[8], ruled a similar issue. Section 6283, R. S. 1919, authorized the Superintendent of Insurance of the State of Missouri to reduce stock fire insurance [916]

companies rates whenever the earnings for five years showed "an aggregate profit therein in excess of what is reasonable" so as to limit the "aggregate collections by insurance companies in this state to not more than a reasonable profit." The court held: "The wording of the statute and the construction thereof by the Supreme Courts of the nation and of the state have outlined a guide for the action of the superintendent." Affirmed on other grounds: 281 U. S. 331, 50 S. Ct. 288, 74 L. Ed. 881. See State ex rel. Mackey v. Hyde, 315 Mo. 681, 691, 286 S. W. 363, 366; Aetna Ins. Co. v. Hyde, 315 Mo. 113, 285 S. W. 65; Id., 275 U. S. 440, 48 S. Ct. 174, 72 L. Ed. 357; Grace Missionary Church v. City of Zion, 300 Ill. 513, 133 N. E. 268, 269[1]; Spencer-Sturla Co. v. Memphis, 155 Tenn. 70, 290 S. W. 608, 614[14].

The ordinances in plaintiffs' cases call for the application of the rule contended for. The instant ordinance differs. An examination of it demonstrates that the many tests and standards therein are of greater detail and preciseness than is found in ordinance provisions considered not to have vested an arbitrary discretion in officers or boards. Furthermore, facilities, safeguards, and exits to secure "safety against the hazard of fire or panic" in motion picture theaters within cities is an exercise of the police power, allowing for an appropriate degree of discretion. The applicable details of the Code are not developed by plaintiffs. The "facilities, safeguards and means of exit" of "Class VI, Wood Frame Structures," such as the Robin Theater building, do not secure substantially that "degree of safety against the hazard of fire or panic" afforded by "Class II, Fire-protected Structures" under said ordinance provisions. The ordinance provisions expressly establish and consequently define the standards controlling under paragraph four of Sec. 10-2. The point is disallowed.

Plaintiffs also rely upon cases holding or containing observations that municipalities, by ordinance, may not declare and suppress something as a nuisance when it is not a nuisance in fact, and say "nor can vested rights be summarily destroyed under the guise of a nuisance, except in great emergency." St. Louis v. Dreisoerner, 243 Mo. 217, 223, 147 S. W. 998, 1000; Potashnick Truck Serv., Inc. v. Sikeston, 351 Mo. 505, 512, 173 S W. 2d 96, 100[4]; Walther v. Cape Girardeau, 166 Mo. App. 467, 477, 149 S. W. 36, 38[5]; Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 346, 15 S. W. 2d 343, 345[2]. Tebbetts v. McElroy, 56 F. 2d 621, 623, also cited by plaintiffs, granted a temporary injunction restraining an unauthorized and arbitrary closing of a "walkathon." The facts in cases sustaining plaintiffs' contention distinguish them from the instant issue.

Reinman v. Little Rock, 237 U. S. 171, 176, 35 S. Ct. 511, 59 L. Ed. 900, upheld against attacks involving the deprivation of property and denial of the equal protection of the law, ordinance terms,

reasonable and nonarbitrary and of uniform operation, having the effect of prohibiting the continuation of an existing livery stable business within a designated area as a valid exercise of and a regulation within the police power; stating: "Therefore, the argument that a livery stable is not a nuisance *per se* . . . is beside the question. Granting that it is not a nuisance per se, it is clearly within the police power of the state to regulate the business . . ." Hadacheck v. Sebastian, 239 U. S. 394, 411, 36 S. Ct. 143, 60 L. Ed. 348; Ann. Cas. 1917B, 927.

Regulating motion picture theaters for the safety of the public as well as regulations protecting the public against the hazards of fire or panic are valid exercises of the police power. State ex rel. v. Smith, 353 Mo. 807, 816[1], 184 S. W. 2d 593, 595[3]; 43 C. J. 203, secs. 202, 331; 37 Am. Jur. 898, secs. 275, 309; 3 McQuillin, Municipal Corporations, 2d Ed., sec. 1056. It stands decided in City of St. Louis v. Warren Comm. & Inv. Co., 226 Mo. 148, 126 S. W. 166, that reasonable provisions of a building code for the City of St. Louis applying to structures of given specifications and used for specified occupancies and enacted for the purpose of protecting property and life against the hazard of fire are valid regulations within the municipal police [917] power for the promotion of the general welfare of the citizens and apply to structures existing at the time of its enactment and structures erected thereafter. Queenside Hills Realty Co. v. Saxl, 328 U. S. 80, 82, 83, 66 S. Ct. 850, 90 L. Ed. 1096. The power of enacting police regulations in the interest of the general welfare " 'is a continuing one, and a business lawful today may in the future, because of the changed situation, the growth of population or other causes, become a menace to the public health and welfare, and be required to yield to the public good.' " Pierce Oil Corp. v. City of Hope, 248 U. S. 498, 500, 39 S. Ct. 172, 63 L. Ed. 382; Hadacheck v. Sebastian, 239 U. S. 394, 410, 36 S. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927.

We need not detail existing charter provisions. It is sufficient to state that the City of St. Louis is vested with ample authority to define and abate businesses detrimental to the health or welfare of the citizens and all nuisances and causes thereof, and to enact proper police regulations, including specific authority to regulate the construction and materials of buildings and structures, inspect the same, and when necessary prevent the use thereof and require alterations to make them safe. See, among others, St. Louis Charter, 1914, provisions, Art. I, secs. 1-(25), (26), (29), (33); Art. XIII and sec. 15 thereunder, including secs. 15(c), (e).

Ordinance No. 42,528, enacted in 1942, of the City of St. Louis makes it the duty of the Chief of the Fire Department and also the Fire Marshal "to take all proper steps for fire prevention"; to "see that all laws and ordinances covering fire hazards, fire preven-

tion and safety to life and property from fire, are complied with.''; whenever "laws and ordinances are not complied with" or premises, buildings, or structures are liable to cause fire, they are to order "the same to be removed or remedied".; and they "shall have such other powers and duties as are set forth in other sections of this ordinance and as may be conferred by other ordinances."

Briefly, and so far as deemed material here, whenever the Division of Building and Inspection finds a building in an unsafe or dangerous condition or a place of public assemblage in such condition as to constitute an immediate and serious fire hazard, or any building from any cause in such condition as to endanger the lives of persons, the Building Code, Ordinance No. 43,114, Part I, Sec. 1-7, directs the Building Commissioner to notify the owner and command the immediate vacation of the building, and in instances like the Robin Theater where the building cannot be placed in a safe condition within twenty-four hours, the Building Commissioner is to condemn the building and the Police Department is to prevent the public from entering the building until the Building Commissioner notifies the Chief of Police that the building is in a safe condition.

Plaintiffs had two years after the passage of the ordinance within which to have the Robin Theater structure conform to the requirements thereof. (See note 3, supra.) Following its passage inspections and reinspections of the Robin Theater building were made in 1946 and plaintiffs were informed that the building was a Class VI structure and did not comply with the new building requirements and would not pass inspection after April 5, 1947, when the new Building Code became effective. Plaintiffs had knowledge that thereafter the Robin Theater would not be permitted to operate in the existing building. The Fire Marshal, notified plaintiffs in writing, April 5, 1947, that the Robin Theater would be closed as a moving picture theater after April 6, 1947, for failure to comply with the Building Code provisions. Thereafter, April 16, 1947, Building Commissioner Baum notified plaintiffs that the Robin Theater was a Class VI structure, endangering the lives of persons, and therefore, condemned by him. The notice further directed plaintiffs to make the building safe or remove it within three days and informed them that if the notice were not complied with the building would be removed and a lien placed against the property for the expenses incurred. It stated the action was taken under Sec. 15, Art. 13 of the Charter, and Secs. 3 and 1-7 of Ordinance No. 43,114. Said Sec. 1-7 confers authority to prevent the continued operation of a motion picture theater; and the closing of [918] the building for occupancy as a motion picture theater in the circumstances of record was within the authority vested in the municipal officials. Zibilich v. Rouseo, 166 La. 547, 117 So. 586, 587[1], held that a fire marshal vested with authority to order the cause "removed or remedied" whenever a build-

ing for any cause was especially liable to fire included authority to close the building to the operation of a picture show therein. The instant action was for the protection of the public "against the hazard of fire or panic" (Sec. 10-2, supra), an exercise of municipal police power.

Plaintiffs remitted their annual license fee for 1947 the first part of April and, although the interested officials contemplated withholding the license, a license was issued April 2, 1947. Plaintiffs say that the closing of the Robin Theater building constituted an illegal revocation of the license. Of course, plaintiffs took the license for 1947 subject to all valid conditions and regulations, and upon compliance therewith could exercise the privileges conferred by the license. The ministerial act of issuing a license does not authorize one to violate applicable police regulations or nullify the authority of officials to enforce them. The governmental function involved may not be alienated, surrendered or abridged by municipal administrative officers. Carthage v. Garner, 209 Mo. 688, 108 S. W. 521; State ex rel. v. Public Serv. Comm., 271 Mo. 270, 197 S. W. 56; Thompson v. City of St. Louis (Mo.), 253 S. W. 969, 972[2]; Potashnick Truck Serv. Inc. v. Sikeston, 351 Mo. 505, 513, 173 S. W. 2d 96, 101; Eichenlaub v. St. Joseph, 113 Mo. 395, 21 S. W. 8, 11; 16 C. J. S. 549, sec. 179; 53 C. J. S. 644, sec. 42e; 43 C. J. 211, sec. 213; 11 Am. Jur. 983, sec. 254; 33 Am. Jur. 371, sec. 52; 37 Am. Jur. 901, sec. 276. Zibilich v. Rouseo, supra.

Building Commissioner Baum testified at the trial that the building "is condemned as a theater," "as a picture show," and that the building might be used for other purposes. This is the extent of the evidence of record bearing on the subject of demolishing and removing a building as contemplated in Sec. 3 of Ordinance No. 43,114, and said Commissioner's notice of April 16, 1947. This testimony discloses that so much of the notice as relates to the removal of the building was arbitrary and not justified and hence not within lawful authority conferred by ordinance provisions. In these circumstances it is unnecessary to set forth the provisions of said Sec. 3 or further develop the issue.

The judgment and decree should be affirmed insofar as it dismisses plaintiffs' bill and permits the closing of the Robin Theater structure to occupancy as a cinema or moving picture theater, but should be reversed and the cause remanded with directions to the end that injunctive relief be afforded plaintiffs against the demolishing and removal of the building under Part I, Sec. 3 of Ordinance No. 43,114. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.